WILLIAM R. HAAGER, ALIAS WILL ROBERT HAAGER, *Plaintiff in Error,* v. THE STATE OF FLORIDA, *Defendant in Error.*

Opinion Filed January 23, 1922.

1. It is not error for the court to refuse to permit a witness undergoing cross examination to retire from the stand and refresh his memory by examining a memorandum previously made by him of circumstances about which he testified, and recall him for further cross examination after he has done so.

2. Where a party desires to attack the credibility of a witness' testimony, or to show that his memory of events about which he testified was vague and uncertain, it may be done by making the witness his own and requiring him to produce the record if it is in his custody.

3. It is not proper for a State Attorney to interrupt the cross examination of a witness and make a suggestion at a critical point in the development of the cross examination, as he may thus save and protect a false witness from betraying himself, but where the record discloses that the interruption did not have that effect, it is not such conduct on the part of the State Attorney as calls for a reversal on that account.

4. Where the record discloses that no harm was done to a defendant by the court sustaining a general objection to a question without requiring the State Attorney to give the grounds for his objection, although error, is harmless.

5. It is proper on cross examination to interrogate a witness about every thing that is said or done by the parties to a homicide relating to the difficulty from the beginning to the end, where part of the events have been testified to on direct.

6. The State Attorney cannot limit investigation into the entire transaction by asking the witness about only one part of the difficulty, and the defendant has a right to interrogate the witness on cross examination so as to bring out all that he saw and all the facts and circumstances connected with the matters already stated, as well the condition of the parties as their acts.

7. To make such cross examination proper the questions must be confined to all the facts and circumstances connected with matters already stated that have any bearing on the case or any relation to the difficulty between the parties.

8. A question so broad as to elicit matters that have no bearing on the case or any relation to the difficulty between the parties is improper.

9. On objection to a question that does not disclose that the answer would throw any light on the transaction, counsel should state to the court what he desires or intends to prove by the question so that the judge can determine its relevancy.

10. There is no error in sustaining objections to questions propounded to a witness, where there is nothing in the questions themselves, nor in the evidence in the case, showing that the answers would be relevant or pertinent to the issues, and the party does not make an offer of what he proposes to elicit by such questions in order that the court may judge of its relevancy.

11. While it may be better for the court in its instructions to the jury to use some other term than that of "slayer" in referring to a person on trial for homicide, its use is not reversible error.

12. A State Attorney should be particularly careful to avoid saying or doing anything that by reason of his personality and the esteem in which he is held in the community, might influence or effect the jury outside the evidence.

A Writ of Error to the Circuit Court for Hillsborough County; F. M. Robles, Judge.

Judgment affirmed.

*MacFarlane & MacFarlane,* for Plaintiff in Error;

*Rivers H. Buford,* Attorney General, and *J. B. Gaines,* Assistant, and *Chas. B. Parkhill,* State Attorney for the Thirteenth Judicial Circuit, for the State.

BROWNE, C. J.—William R. Haager was convicted in Hillsborough County Circuit Court of murder in the second degree for the killing of Daniel W. Hall.

Both sides of the case are strongly presented by counsel for plaintiff in error and the State Attorney for the Thirteenth Judicial Circuit who briefed the case on behalf of the State.

The brief of the plaintiff in error skilfully classifies the assignments of error into (1) Those founded upon the action of the court in the admission and rejection of evidence; (2) Upon the attempted impeachment of the witnesses, Miss Lillian Langford and Morris Tracy; (3) Those based on remarks and conduct of the State Attorney; (4) Those based upon instructions of the court.

The first assignment discussed under the first classification is based upon the refusal of the court to allow a witness, Alice M. Lindner, to retire from the stand during her cross-examination in order to refresh her memory by examining a memorandum that she had previously made of circumstances about which she testified.

This witness was a nurse in the hospital to which the plaintiff in error was taken on the night of the homicide.

She testified on cross-examination that there was a wound on his right leg, but upon further interrogation she said that she did not remember and could not say positively that it was not on the left leg; that she had made a record of the wounds she found on Haager, and that the records were in the Gordan Keller Hospital from which she could refresh her memory.

The attorney for the defendant below then asked the court to permit the witness to go to the hospital and there refresh her memory, and he be allowed to recall her for further cross-examination after she had done so. This request was denied and exception duly taken.

At the time of making his ruling the court stated that if counsel desired to prove the contents of a record made by a witness, he could do so by, making her his witness. This testimony could not have been used for the purpose of impeaching the witness or discrediting her veracity, because after stating that the wound was on the right leg, she expressed doubt and uncertainty about it. The only effect would have been to show that she was mistaken in her direct testimony, and on cross-examination she admitted she might have been.

Insofar as it affected the truth of the contention of the defendant that the blow was on his right leg, this was established by all the witnesses who testified on this point; and it was clearly shown that she was mistaken. If the witness had been very positive about the location of the wound, and there was not ample testimony to establish the absolute truthfulness of the defendant's testimony as to the location of the wound, and it became necessary in order to contradict her that the record should be produced, if there was such a record kept at the hospital, there was

nothing to prevent the defendant from proving the truth of the matter by the record, either by making this witness his own and proving the record by her, or by proving it by the custodian of the records at the hospital. If the purpose was to discredit her or weaken the effect of her testimony, by showing that her memory as to the events of that night was vague and uncertain, she admitted this on cross-examination, and subsequent testimony so completely established this fact that no harm could possibly have been done by failure to produce cumulative evidence on this point that the records would have furnished. If there was error in not granting the request of defendant's counsel, it was error without injury.

The 25th, 26th, and 27th assignments present the question of the conduct of the State Attorney in injecting a remark into the proceedings while this witness was under cross-examination; in propounding a question to her; and certain remarks by him during the discussion of these matters before the court, that counsel for defendant considered charged him with unfair dealing.

The witness testified on direct examination, that the defendant while in the hospital on the night of the homicide, said: "If he had had a gun he would have finished the job." She said she was unable to say of her own knowledge whom he was talking about when he made that remark.

The proceedings objected to grew out of the following questions and answers on cross-examination: "Q. Have you told all that you remember this defendant having said? A. Yes, sir. Q. And all you remember that he said was that if he had had a gun he would have finished him? A. I remember that. Q. Is that all you remember? A. Yes,

sir.''    At this point the State's Attorney said:    ''I re-
member it a little differently.   What did he say?''

The record shows that the difference in the testimony
of this witness as to what Haager said was, that on direct
examination she used the words, ''finished *the job*,'' and
on cross-examination she said ''finished *him*.''   We fail to
see where any harm could have been done either to the
State or the defendant by what occurred.

The colloquy that took place between the State's Attor-
ney and counsel for the defendant on this point was much
sharper than there seems to have been any necessity for,
and each seems to have found in the language of the other
more than either intended.

Technically perhaps, counsel has no right to interrupt
the cross-examination of a witness, for by doing so at a
critical point in the development of the cross-examination
he may save and protect a false witness from betraying
himself and having his case broken down.   We cannot say,
however, that such was the situation here complained of.
The difference between what the witness testified to in
chief, and the question asked by counsel for defendant on
cross-examination, was so slight as to be immaterial, and
the witness may not have been conscious of any difference
in her two statements.

The State's Attorney might have waited until the cross-
examination was concluded and asked the witness to repeat
exactly what Haager said, but it is in the interest of justice
to have the testimony of a witness go to the jury so clear
that there can be no controversy between counsel as to
what the witness said, and even if it were not proper for
the State's Attorney to have asked his question at the

time he did, we can see no harm resulting therefrom in this instance.

The next assignment is based upon the court's sustaining an objection by the State's Attorney to this question propounded by counsel for defendant to the State's witness Shirley: "As a matter of fact when you have to testify in favor of something that would be in favor of this defendant you have to magnify on the other side have you not Mr. witness?"

From the testimony of the witness, the implication contained in this question seems warranted, but it was a matter of argument to the jury, and not a proper question to be propounded to the witness, although we cannot see where any harm could have been done to the State's case by permitting him to answer it, nor where any harm was done the defendant by the court's refusal to permit it. If the witness had answered the question in the negative,—as in all probability he would,—it would still have been a matter for the jury to consider in determining the credence to be given to his testimony. If it showed the infirmity indicated by the question, it was a matter for the jury to consider, and an answer by the witness apparently could have had no influence on the probative effect of his testimony.

It is contended by counsel for plaintiff in error that this question was a proper one, as the answer would show the mental attitude of the witness towards the defendant. We cannot see that such would have been the result. If the witness' testimony was subject to the criticism contained in the question, it is probable that his answer would have been in the negative, which would have left his testimony in precisely the same light with regard to its probative force as it was without the question being answered.

When the question was propounded, the State's Attorney said: "I object to that. I do not think that this witness ought to be subjected to such an accusation." Whereupon the court ruled: "I think it is improper. The witness is testifying. The jury will be the judges of whether he is magnifying or not. The objection is sustained."

This court has laid down the rule that a general objection to a question will not be considered, but the court in this instance promptly ruled upon the general objection, and this is criticised in the brief of counsel for defendant in error.

Having held that no harm was done the defendant by the court refusing to allow this question to be asked, the judgment should not be reversed for the error in ruling on the general objection of the State's Attorney without requiring him to state the grounds of his objection.

The next assignment discussed relates to the action of the court in sustaining an objection to this question propounded to the State's witness Shirley upon cross-examination: "And did you tell this jury that he (meaning the defendant) did not refuse to fight, do you?" We think the objection that this question was "immaterial, irrelevant and improper," was properly sustained by the court, because the witness had already testified as follows: "Q. Haager refused to fight, didn't he? A. No, sir, he didn't refuse, he just said he wasn't able to fight." He then testified specifically that Haager said, "No. I am not able to fight now," "I am crippled now." The witness had also testified that Haager "didn't refuse to fight," and the question could only have elicited a repetition of his former testimony, which in itself was a conclusion based upon what the witness testified that Haager said.

The next assignment argued is based upon the refusal, of the court to allow the defendant to ask the witness L. N. Milam, Jr., on cross-examination, "Did he say or do anything then?" and a similar question propounded to the witness W. B. Jones.

Under the doctrine enunciated by this court in the case of Savage and James V. State, 18 Fla. 909, we think it was proper for counsel on cross-examination to interrogate the witness about everything that was said or done either by Haager or Hall from the time the difficulty began until Haager left the scene of the difficulty. The State's Attorney could not limit investigation into the entire transaction by asking the witness about only a part of the difficulty, and the defendant had a right to inquire if the defendant said anything else.

In the case of Savage and James v. State, *supra*, this court said: "And it was proper cross-examination, not only for the purpose of proving by him any surrounding facts other than those testified to, but for the purpose of testing the correctness of the statements already made, and for these objects the cross-examination is not to be confined to what the witness had already stated. He may be inquired of as to *all* he said, and *all the facts* and circumstances connected with the matters already stated, which includes as well the condition of the parties as their acts."

We think, however, the question was open to objection, because it did not limit the conversation to the difficulty between Hall and Haager. The question was entirely too broad, and might well have elicited matters that had no bearing on the case or any relation to the difficulty between these parties.

The trial court could not assume, nor can we, that the answer to the question would have thrown any light on the transaction or been helpful to the defendant. Counsel should have stated to the court what he desired or intended to prove by the question so that the judge could have determined its relevancy, and this court could have passed upon it.

The rule is well settled that "excluded evidence should be set forth in order that an appellate court can determine whether or not it was properly excluded." Davis v. State, 54 Fla. 34, 44 South. Rep. 757. "There is no error in sustaining objections to questions propounded to a witness, where there is nothing in the questions themselves, nor in the evidence in the case showing that the answers would be relevant or pertinent to the issues, and the party does not make an offer of what he proposes to elicit by such questions in order that the court may judge of its relevancy." Starke v. State, 49 Fla. 41, 37 South. Rep. 850. "It is the duty of a party appealing to an appellate court to make the errors apparent of which he complains; and where in the examination of witnesses on the trial, any of his questions have been excluded on objection, and such questions do not in and of themselves indicate whether the answers thereto will be material or pertinent evidence or not, it is his duty, in order to have the rulings thereon reviewed on appeal, to make an offer at the trial of what he proposes to elicit or prove by such questions, so that both the trial and appellate court can determine whether the proposed evidence is material or not; otherwise he fails to make his alleged error to appear, and the appellate court will so declare." Boykin v. State, 40 Fla. 484, 24 South. Rep. 141.

Counsel for defendant in his brief indicates what testimony he expected to elicit by the excluded question, but it does not appear from the record that he apprised the trial judge of this, and we cannot now say that with the question as framed and without any statement of its purpose, that the court erred in sustaining an objection to it.

Upon this point this court in the case of Kelly v. State, 55 Fla. 51, 45 South. Rep. 990, said: "In the briefs of counsel for the plaintiff in error, filed here, it is intimated that if this testimony had been elicited it would have disclosed a conspiracy * * * to kill or inflict great personal injury upon the defendant. If this was the purpose of the proffered testimony, it should have been so stated at the time of its offer in order to enable the trial court to pass upon its relevancy. An appellate court cannot recognize any assertion of fact made in the briefs of counsel that is not contained in the transcript of the record before it for review."

On the other hand, if the purpose of the question was to contradict the testimony for the State that tended to show malice or premeditation, no harm resulted from excluding the testimony, because the jury on the question of malice or premeditation found in favor of the defendant, by acquitting him of murder in the first degree and finding him guilty of murder in the second degree, which negatives premeditation.

With regard to the same question propounded to the witness Jones, it appears from the record that the witness answered the question. "Q. Did he say anything then about the difficulty? A. No. sir, not that I know of." After the answer, the objection to the question was interposed and sustained, but the answer was not stricken, and

it appears from the answer that even if it had been excluded no harm could have resulted to the defendant, because the witness testified that the defendant did not then say anything about the difficulty.

The next assignments discussed relate to the attempted impeachment of two of the defendant's witnesses, Morris Tracy and Mrs. Lillian Langford.

On cross-examination of Morris Tracy, the State Attorney asked him if he had not given stated answers to questions propounded to him when testifying before the grand jury which found the indictment in the case.

Strong objection was made to the State's Attorney reading from what he stated to be the stenographer's notes of the testimony taken before the grand jury, and asking the witness if he had not made certain replies to such questions. The judge overruled the objections and the witness stated positively that he did not so testify before the grand jury. Subsequently the court on objection by the defendant, refused to permit the court stenographer who took down the testimony before the grand jury, to rebut the denial of the witness that he had testified in a stated way before the grand jury.

Thus the matter stood on the denial of the witness that he had testified before the grand jury as the State's Attorney had read from the stenographer's notes. However irregular the attempted contradiction of this witness may have been, the State was not allowed to contradict the denial of the witness, and in view of all the testimony in the case, we can not say that harm resulted to the defendant by the proceeding.

The same may be said about similar proceedings in the cross-examination of Mrs. Lillian Langford.

The assignment of error based upon the instruction of the court on "reasonable doubt," may be dismissed with this comment, that there is probably nothing that must be left more largely to the fairness of the trial court than the instruction upon this phase of the law.   Attempts to explain and define what is meant by "reasonable doubt" often leave the subject more confused and involved than if no explanation were attempted.   The instruction may be given in such a manner, and with such an inflection of voice, as to incline the jury to believe that there is sufficient doubt to almost require an acquittal, and in other instances, may be so given as to make the jury feel that they would be guilty of a dereliction of duty, if they entertained any doubt of the prisoner's guilt.

In the charge complained of, the court undertook to differentiate between "a mere shadowy, flimsy doubt," and "a substantial doubt."   The jury may have understood the distinction, but we are unable to grasp its significance. Every doubt whether it be reasonable or not, is "shadowy" and "flimsy," and it would be better if judges would give the usual charge on the subject of reasonable doubt without attempting to define, explain, modify or qualify the words "reasonable doubt."

The eighth assignment is based upon the use by the court in one of its instructions to the jury of the word "slayer," and it is contended that this instruction is objectionable "because it showed the court's opinion of the guilt of defendant by the use of the term slayer."   In support of this counsel cites from Funk & Wagnall's Standard Dictionary which gives "murderer," as one of the definitions of slayer, and contends that "such is the generally accepted meaning of the term," and "in common parlance to call a man a 'slayer' or a 'killer' carries with it the

implication that he is one of those cold blooded murderers who, always seeking the advantage, mercilessly destroys his opponent when he has obtained it.'' We think the assignment is not well taken.

This court in at least two cases has used the term ''slayer'' in describing a person charged with homicide, and it is quite apparent from the opinions that the court did not use the word in the sense contended for by counsel. See Pinder v. State, 27 Fla. 370, 8 South. Rep. 837; Lovett v. State, 30 Fla. 142, 11 South. Rep. 550.

We find the use in the Bible of the word slayer to describe one who kills another in error and without wicked intent, and that the Lord told Moses to appoint cities of refuge ''that the slayer may flee thither, which killeth any person at unawares.'' Numb. 35, 11; Deut. 4, 42; 19, 3; Josh. 20, 3.

We have given careful consideration to the assignments of error relating to alleged improper conduct on the part of the State's Attorney and do not find reversible error in connection therewith.

A person of as high standing as the State's Attorney for the Thirteenth Circuit, having been Circuit Judge, a Justice of the Supreme Court, and in the legal department of the United States Army during the recent war, must necessarily exercise great weight and influence with the jurors. He should be particularly careful to avoid saying or doing anything that could by reason of his personality, and the high esteem in which he is justly held, influence or affect the jury outside the evidence.

Where once or twice this occurred in the progress of this hard fought case, the court properly instructed the jury ''not to be prejudiced by remarks of counsel'' and

to make up their minds "according to facts found by the evidence, and pay no attention to these remarks."

We have carefully considered all the assignments of error, and weighed the able argument, oral and written of the counsel for the plaintiff in error, and find no reversible errors.

The judgment is affirmed.

TAYLOR, WHITFIELD, ELLIS AND WEST, J. J., concur.

WEST, J.—Concurring.

The instruction upon the subject of "reasonable doubt" given in this case has been in general use in some, if not all, of the trial courts of this State for many years. It is not, in my judgment, rightly subject to the criticism contained in the opinion. Its object is to clarify an expression not susceptible of precise definition. Its tendency seems to me to be helpful. It cannot be said to be harmful. Otherwise I concur.