412 So.2d 332 (1982)
Walter Gale STEINHORST, Appellant,
v.
STATE of Florida, Appellee.
No. 55087.
Supreme Court of Florida.
March 4, 1982.
Rehearing Denied April 27, 1982.
*334 Clifford L. Davis, Tallahassee, for appellant.
Jim Smith, Atty. Gen. and Miguel A. Olivella, Jr., Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
This cause is before the Court on appeal from a judgment of the Circuit Court of the Fourteenth Judicial Circuit, in Bay County. The appellant was convicted on four counts of murder in the first degree and received three death sentences and one sentence to life imprisonment. We have jurisdiction of his appeal. Art. V, § 3(b)(1), Fla. Const.

I.
The testimony at trial showed that the appellant was a participant in a marijuana importation conspiracy. In accordance with the smuggling plan he was present on the night of January 23, 1977, near a beach landing site at Sandy Creek in Bay County. Appellant's job was to guard the entrance to a dirt road leading to the beach where the marijuana was to be brought ashore and loaded on trucks.
Two men, Harold Sims and Douglas Hood, and two teenage girls, Sheila McAdams and Sandra McAdams, approached the place where appellant was standing guard. Although there is nothing to explain their presence at that time and place, one reasonable inference is that they stumbled on the site of the smuggling operation by chance. The testimony indicates that there was then an exchange of fire between Harold Sims and the appellant. Harold Sims was shot and killed. Appellant then took the other three people captive, and confined them in a passenger van.
The testimony of several witnesses shows that appellant then proceeded to consult with several of his co-conspirators. It appears that Douglas Hood and the two McAdams girls were held captive for several hours while appellant and the leaders of the group decided what to do with them. *335 Meanwhile, the landing and loading of marijuana proceeded almost until morning.
Bobby Joe Vines, the organizer of the smuggling scheme, testified that after the shooting of Harold Sims, appellant asked that his friend Charles Hughes be brought to him. Hughes was summoned from the landing site where he was bringing marijuana ashore. There was testimony from which the jury could infer that when Vines and the other men left the area with their loads of marijuana, appellant and Hughes departed with a human cargo of one dead and three living persons.
Several months later divers discovered the bodies of the victims in a sinkhole in Taylor County. The evidence showed that all four victims had been shot to death. The bodies were weighted down with concrete blocks.
Various participants in the smuggling operation met over the next several days at a farm house in Gadsden County. Several of the participants testified that appellant and Hughes stated that they had disposed of the victims and put them where they would never be found. Also, David Capo testified that appellant admitted the killings of all four victims.
Appellant contends that the evidence was insufficient to sustain the verdicts of the jury. This contention is without merit.

II.
Appellant presents several arguments concerning procedural errors which he contends require a new trial.
Appellant argues that the trial court erred in granting the state's challenges for cause to prospective jurors who indicated that they were opposed to capital punishment. Under Florida law, there is a ground for excusal for cause when jurors indicate that they would be unable, after finding the accused guilty of a capital offense, to participate in the required weighing of aggravating and mitigating circumstances and to consider death as a possible penalty. Another ground exists when prospective jurors' opposition to the death penalty might interfere with their deliberation on the question of guilt or innocence.
Appellant concedes that these standards were followed by the trial court, but argues that in view of the wide prevalence of opposition to capital punishment, the exclusions deprived him of his right to be tried by a jury representative of the community. Our ruling on this contention is controlled by precedent. The argument is without merit. Jackson v. State, 366 So.2d 752 (Fla. 1978), cert. denied, 444 U.S. 885, 100 S.Ct. 177, 62 L.Ed.2d 115 (1979); Riley v. State, 366 So.2d 19 (Fla. 1978).
Appellant contends that the court erred in allowing the state to present the testimony of relatives of the victims. He relies on the rule that a member of a murder victim's family may not testify for the purpose of identifying the deceased where a non-related witness is available for such purpose. See Lewis v. State, 377 So.2d 640 (Fla. 1979); Rowe v. State, 120 Fla. 649, 163 So. 22 (1935). The wife of Harold Sims and the mother of Sheila McAdams were allowed to testify, but not for the purpose of identifying the bodies of the victims. The defense had stipulated to the matter of identity. The testimony of these witnesses was presented to establish that the victims were seen alive on the day preceding the murders.
When Mrs. McAdams broke down on the witness stand, the judge ordered the jury removed. Following this occurrence, the defense stipulated to the admission in evidence of a police missing-persons report so that Mrs. McAdams would not have to testify further. The judge instructed the jury to disregard the unexpected emotional outburst. The impropriety, if any, was harmless.
Appellant contends that the trial court erred in denying his motion to strike the testimony of a state witness and in denying his motion for mistrial, both motions being grounded on a violation of the rule of sequestration of witnesses. On cross-examination of state witness Lloyd Woods, defense counsel brought out the fact that the *336 witness had overheard testimony while waiting outside the courtroom and had also heard testimony by live radio broadcast while waiting in the state attorney's office. Defense counsel moved to strike Woods's testimony.
The trial judge conducted an inquiry. Woods told the judge that there was a radio on in the state attorney's library and that he and several other witnesses had heard parts of the testimony. He said he also heard some in the hall outside the courtroom. Examination by state and defense counsel focused on whether Woods's testimony had been affected by what he heard. Upon inquiry by the court, it developed that a number of state witnesses had overheard the testimony of other state witnesses either in the hall outside the courtroom, or, by radio, in the state attorney's office or in the jail. In his brief appellant relies on the impropriety of these witnesses testifying. At trial, however, appellant through counsel moved to strike only Woods's testimony and moved for a mistrial after the inquiry into Woods's rule violation. Defense counsel declined the court's offer to allow examination of other state witnesses concerning what testimony they had overheard and whether it influenced them.
Appellant contends that Dumas v. State, 350 So.2d 464 (Fla. 1977), applies and requires a new trial. There the trial court refused to allow a defense witness to testify, on the ground that he had remained in the courtroom in violation of the rule. This Court pointed out that the rule is intended to prevent a witness from shaping his testimony by what he hears from other witnesses. "Balanced against the rule, however, is the criminal defendant's Sixth Amendment and due process right to present witnesses in his own behalf." Id. at 465. Without indicating precisely what circumstances will justify excluding a defense witness for violation of the rule, we simply held that it was error to exclude the witness without conducting an inquiry "to determine whether the witness acted with the knowledge, consent, procurement or connivance of the defendant or defense counsel... ." Id. at 466.
Just as the defendant has the constitutional right to present witnesses in his behalf, the people of the state, acting through the state attorney, have the inherent sovereign prerogative to present evidence of the defendant's criminal conduct. It is the duty of the state attorney to carry out this prerogative of the people. Art. V, § 17, Fla. Const.; § 27.04, Fla. Stat. (1979). Just as a defense witness, as Dumas held, should not be excluded without inquiry into whether the rule violation occurred with the knowledge or by the connivance of the defendant or defense counsel, so also should a state witness who has violated the rule not be excluded without similar inquiry. In the present case there was inquiry into the effect of the violation on Woods' testimony.
Dumas does not outline the circumstances under which a court may properly exclude a witness for violating the rule. The test, however, is whether the testimony of the challenged witness was substantially affected by the testimony he heard, to the extent that his testimony differed from what it would have been had he not heard testimony in violation of the rule. Defense counsel tried to show that the testimony of Woods may have been affected by what he heard. The state attorney elicited testimony contradicting this, and the court made a determination and ruling. The defense waived the opportunity for a similar examination of the other witnesses. Now appellant argues that the court, on its own motion, should have inquired into the effect of and state complicity in the violations. This contention is without merit.
Appellant contends that the trial judge improperly limited defense counsel's cross-examination of a state witness and that this was reversible error. Appellant relies on our decision in Coxwell v. State, 361 So.2d 148 (Fla. 1978).
During the direct examination of state witness David Capo, it was brought out that the witness had a conversation with appellant a few days after the smuggling operation. The conversation took place at the home of David Goodwin in Tallahassee. *337 Capo testified that at this time appellant told him the circumstances of the killings.
On cross-examination, defense counsel asked Capo why he was at David Goodwin's house talking with appellant about the murders. Capo responded that he was there to inquire what had become of Chris Goodwin, who had been left offshore in a small boat the night of the smuggling operation. Defense counsel then asked whether Capo was an instrumental part of the importation scheme.
At this point witness Capo's own attorney asked to approach the bench. He invoked the privilege against self-incrimination on behalf of his client, who, he said, was subject to prosecution in federal court. The jury was taken out of the courtroom and argument was heard. The court limited cross-examination to the witness's knowledge of the murders and declined to allow inquiry into his participation in the smuggling plan generally. Defense counsel objected and moved for a mistrial.
The objection interposed by Capo's attorney was based upon the argument that defense counsel's questioning had exceeded the scope of permissible cross-examination, although relevance and the witness's interest in not incriminating himself were also mentioned. Appellant's motion for mistrial, taking exception to the court's ruling sustaining the objection, was grounded on the argument that the line of questioning was relevant to the issue of the witness's credibility.
The right of a criminal defendant to cross-examine adverse witnesses is derived from the Sixth Amendment and due process right to confront one's accusers. One accused of crime therefore has an absolute right to full and fair cross-examination. Coco v. State, 62 So.2d 892 (Fla. 1953). A limitation on cross-examination that prevents the defendant from achieving the purposes for which it exists may be harmful error.
The proper purposes of cross-examination are: (1) to weaken, test, or demonstrate the impossibility of the testimony of the witness on direct examination and, (2) to impeach the credibility of the witness, which may involve, among other things, showing his possible interest in the outcome of the case. Burns v. Freund, 49 So.2d 592 (Fla. 1950); Louette v. State, 152 Fla. 495, 12 So.2d 168 (1943); Leavine v. State, 109 Fla. 447, 147 So. 897 (1933); Padgett v. State, 64 Fla. 389, 59 So. 946 (1912). Therefore it is held that questions on cross-examination must either relate to credibility or be germane to the matters brought out on direct examination. Pearce v. State, 93 Fla. 504, 112 So. 83 (1927); Wallace v. State, 41 Fla. 547, 26 So. 713 (1899). If the defendant seeks to elicit testimony from an adverse witness which goes beyond the scope encompassed by the testimony of the witness on direct examination, other than matters going to credibility, he must make the witness his own. Stated more succinctly, this rule posits that the defendant may not use cross-examination as a vehicle for presenting defensive evidence. Coco v. State, 62 So.2d 892 (Fla. 1953); Padgett v. State, 64 Fla. 389, 59 So. 946 (1912).
In summary, the rule permits inquiry into "all the facts and circumstances connected with the matters of the direct examination." It does not, however, "preclude an inquiry as to the animus, interest, or motives of a witness in reference to the parties litigant or the subject-matter of the suit." Tischler v. Apple, 30 Fla. 132, 138-39, 11 So. 273, 275 (1892).
Appellant argues that Coxwell v. State, 361 So.2d 148 (Fla. 1978), is applicable to this case. In Coxwell, the Court held
that where a criminal defendant in a capital case, while exercising his sixth amendment right to confront and cross-examine the witnesses against him, inquiries of a key prosecution witness regarding matters which are both germane to that witness' testimony on direct examination and plausibly relevant to the defense, an abuse of discretion by the trial judge in curtailing that inquiry may easily constitute reversible error.
Id. at 152 (citation omitted). Appellant contends:

*338 Here, as in Coxwell, not only was the ruling erroneous since the cross-examination did not exceed the scope but is prejudicial to Appellant's defense since it forestalled development of the only viable defense theory; that Capo and Vines had set up a marijuana deal, hired Steinhorst to unload the boat, had profited royally, received immunity and placed the blame for the murders on their hireling when they were actually committed by their major co-conspirator and comrade David Goodwin.
Brief of Appellant at 25. It is to be noted, however, that this "only viable defense theory" was not argued below when defense counsel responded to Capo's lawyer's objection, took exception to the judge's ruling, and moved for a mistrial. Defense counsel at that time asserted that his line of inquiry was calculated to impeach the credibility of the witness.
There are a number of reasons why appellant may not prevail on this issue. In the first place, at trial appellant's counsel stated that the questions he wished to ask the witness were for the purpose of impeaching his credibility. Appellant now argues, however, that he was trying to develop a viable defense theory that Capo and Vines wanted to blame the murders on appellant and protect David Goodwin. Since defense counsel did not present this latter argument to the trial court, it is not properly before this Court on appeal.
Except in cases of fundamental error, an appellate court will not consider an issue unless it was presented to the lower court. State v. Jones, 377 So.2d 1163 (Fla. 1979); State v. Barber, 301 So.2d 7 (Fla. 1974); Silver v. State, 188 So.2d 300 (Fla. 1966); Dukes v. State, 3 So.2d 754, 148 Fla. 109 (1941). Furthermore, in order for an argument to be cognizable on appeal, it must be the specific contention asserted as legal ground for the objection, exception, or motion below. Haager v. State, 83 Fla. 41, 90 So. 812, 813 (1922); Kelly v. State, 55 Fla. 51, 45 So. 990 (1908); Camp v. Hall, 39 Fla. 535, 22 So. 792 (1897); Black v. State, 367 So.2d 656 (Fla. 3d DCA 1979).
Secondly, even if appellant were to confine his argument on appeal to the ground raised below, we would not perceive any error. Defense counsel said the purpose of the inquiry was to impeach credibility. It is proper for such purpose to ask a witness about past criminal convictions, and also to bring out pending criminal charges. But it is not proper to engage in a general attack on the character of the witness. Pandula v. Fonseca, 145 Fla. 395, 199 So. 358 (1940); Taylor v. State, 139 Fla. 542, 190 So. 69 (1939); Nelson v. State, 99 Fla. 1032, 128 So. 1 (1930). While the defense had the right to question Capo as to the whole of the conversation he spoke of on direct examination, Louette v. State; Haager v. State, and as to the factual background of the conversation, to question him generally about his role in the marijuana smuggling operation would have been to engage in a general attack on his character. Direct examination had pertained to the conversation and had touched on the background and the occasion for it, but the court below was correct in preventing the cross-examination from either going beyond the scope of direct or becoming, under the guise of impeachment, a general attack on the character of the witness.
Furthermore, as far as the matter of impeachment of the credibility of the witness is concerned, any error in restricting the defense in its attempt to show Capo's involvement or interest in the case was surely harmless, as these matters were substantially put before the jury through the direct and cross-examination of Capo as well as the testimony of other witnesses. Steele v. State, 85 Fla. 57, 95 So. 299 (1923); Danford v. State, 53 Fla. 4, 43 So. 593 (1907).
Finally, even if we were to consider the argument appellant presents, that the court's sustaining the objection deprived him of the opportunity to develop a viable defense theory, we would find the contention to be without merit. This case is not like Coxwell. In order to have developed the viable defense theory now asserted, defense *339 counsel would have had to go beyond the scope of direct examination. This is a case in which it would have been proper to require the defendant, to develop his theory, to call his own witnesses, as this theory was clearly a defensive matter well beyond the scope of the direct examination.
For the above-stated reasons, we find appellant's argument that the court's ruling on the cross-examination question entitles him to a new trial to be without merit.
The appellant contends that he was denied a fair trial because of improper, prejudicial comments made by the prosecutor in closing argument to the jury. Appellant claims the state attorney indirectly commented on the fact that appellant did not testify, expressed an opinion as to appellant's guilt, evoked geographical prejudice, and misstated the evidence to inflame the jury.
Defense counsel made no objections to any of the comments he attacks as improper now, with the single exception of the instance where the prosecutor attributed to appellant a particularly callous remark regarding one of the victims when the testimony showed it was actually made by Charles Hughes. Upon defense counsel's objection, the trial judge advised the jurors that they were the sole judges of the evidence. The impropriety was thereby corrected. Our review of the closing argument in the context of all the circumstances reveals that there was no impropriety in any of the other prosecutorial comments.
Having given careful consideration to all appellant's contentions of reversible error, we find there is none. Therefore, the judgments of conviction are affirmed.

III.
The jury recommended a sentence of life for the murder of Harold Sims and death for each of the murders of the other three victims. The trial court judge imposed sentence in accordance with the recommendations of the jury. The court made written findings as follows:
After studying, considering, and weighing all of the evidence in the case the Court makes the following findings of fact as to aggravating circumstances:
1) The capital felony was committed while the defendant was engaged, or was an accomplice, in the commission of the crime of kidnapping [Florida Statutes, Section 921.141(5)(d)]. The defendant was involved in a marijuana smuggling operation: his role was to prevent anyone from approaching the beach where the marijuana was being brought from a boat, so that there would be no witnesses to the illegal operation. Douglas Hood, Shiela McAdams, and Sandra McAdams approached the lookout post in a truck driven by Harold Sims. After an exchange of gunfire between Sims and the defendant, Sims was killed. The defendant and others put Hood, Shiela McAdams, and Sandra McAdams in a van. They were tied and gagged. The defendant and Charlie Hughes left the scene in the van with the three victims. This was kidnapping. The bodies of the victims were found, months later, in a sinkhole more than one hundred miles from the scene of the marijuana smuggling operation.
2) Although there would be pecuniary gain in the event the smuggling operation was successful, the Court does not find that the murder was committed for pecuniary gain as contemplated by Florida Statutes, Section 921.141(5)(f). Although the smuggling operation was for pecuniary gain, the murder was not.
3) The capital felony was especially heinous, atrocious, and cruel. Florida Statutes, Section 921.141(5)(h). The three victims, bound and gagged were confined in a small van with the body of their companion, Harold Sims. They were not blindfolded. While under armed guard, they underwent the experience of seeing the firearms which would be the instruments of execution, hearing the sobs of each other, seeing the dead body of Sims, and feeling the hope of survival vanish. The first victim suffered the least and the last suffered the most. *340 These were execution-type slayings, requiring cold, brutal, and heartless calculation to murder by firing a shot into the skull of a defenseless human being. Although the evidence does not show whether Charlie Hughes or the defendant actually pulled the trigger, the evidence does show that only these two were with the victims at the time of the murder. Defendant was armed and was in the rear of the van with the victims when it was driven to the place of execution by Hughes. Hughes has never been apprehended.
The Court makes the following findings of fact as to mitigating circumstances:
The defendant has no significant history of prior criminal activity.
The court further finds that there were no mitigating circumstances which outweigh the aggravating circumstances. These were pitiless crimes which were unnecessarily torturous to the victims. In light of the totality of the circumstances, it is the reasoned judgment of the Court that the advisory sentence of the jury should be followed and that the death sentence should be imposed upon the defendant.
Appellant contends that the judge's findings are not supported by the evidence and that the aggravating circumstances found are legally inappropriate under the circumstances. We conclude that the evidence supports the findings of aggravating circumstances. The finding that the murders were committed in the course of the crime of kidnapping is proper. The finding of heinousness based on infliction of mental anguish is also proper. Knight v. State, 338 So.2d 201 (Fla. 1976). Therefore, we approve the findings. We also approve the judge's determination that the aggravating circumstances outweigh the mitigating circumstance.
The aggravating circumstances outweigh the one mitigating factor. The jury recommended three sentences of death. We therefore approve the sentences of death.
The four judgments of conviction of murder in the first degree and three sentences of death are affirmed.
It is so ordered.
BOYD, OVERTON, ALDERMAN and McDONALD, JJ., concur.
SUNDBERG, Chief Justice, dissenting:
Because I believe there was a substantial violation of the rule of sequestration and the voir dire examination of witness Wood demonstrated probable prejudice I would reverse the conviction and remand for a new trial. Cf. Dumas v. State, 350 So.2d 464 (Fla. 1977) (inquiry required for sequestration violation to determine witness disqualification).