ERVIN, Chief Judge.
Appellant, Roger Allan Rivera, appeals his conviction for aggravated assault with a deadly weapon, not a firearm, contending that the trial court committed reversible error in (1) denying his motion both to suppress pre-trial identifications and prohibit in-court identifications by the victim and eyewitness, (2) limiting his cross-examination of the victim and of the investigating officer to the extent that he was obliged to call those witnesses as his own, thereby precluding his impeachment of their testimony, and (3) refusing to instruct the jury as to the crime of attempted aggravated assault. We find no error as to point one and affirm as to it. We agree, however, that reversible error occurred as to points two and three, and therefore reverse and remand the case for new trial.
The record discloses that the victim and her mother were traveling west on Gaines Street in Tallahassee on April 29, 1982, when a car driven by a young man, with a Doberman Pinscher inside it, pulled up behind them with its horn blaring and the driver shouting obscenities and profanities. At the next intersection the car, following that driven by the victim’s mother, proceeded next to the passenger’s side of the automobile, and the young man, while continuing his verbal abuse, pointed what appeared to be a gun at the victim. During the incident, which lasted approximately five minutes, both women had a clear view of their assailant, the car, the dog and the firearm. When the man drove away, the women followed and were able to record his license number which they promptly reported to the police.
Officer Garber of the Tallahassee Police Department, who was assigned to investigate the event, learned the automobile was registered to Rivera, 'a resident of Miami attending Florida State University. On May 4, 1982, after having made initial contact with Rivera, Officer Garber interviewed the victim and her mother and showed the women, separately, a photographic line-up of six individuals, including a photograph of Rivera taken more than a year earlier. The victim was unable to identify the driver from the line-up because she had remembered him as being more clean-cut than any of those pictured. The victim’s mother, however, picked two possible suspects from the display, one of whom was Rivera, but expressed the same reservations regarding the quality of the picture presented. Afterward, when Officer Gar- *542 ber met with both women, she pointed out Rivera’s photograph and told the women that the vehicle bearing the license tag they had recorded was registered to Rivera. After that revelation, the victim’s mother seemed more certain that Rivera was in fact the driver.
The defense, contending the photographic lineup was so impermissibly suggestive as to create a substantial likelihood of irreparable misidentification at trial, moved to suppress any evidence of the pretrial identifications and to prohibit in-court identifications. A pretrial hearing was held on the motion at which time the victim and her mother testified at length regarding the incident; their opportunity to view the driver, his car and dog; their degree of attention; the initial descriptions they had given the police; their unsuccessful attempts at positively identifying Rivera from the photograph, and their certainty that they could nevertheless identify the driver if they saw him in person. On that evidence, the motion to suppress was denied and the case proceeded to trial.
At trial, during direct examination of the victim, the state limited its inquiry to the events that occurred on April 29, 1982, relating to the victim’s descriptions of the driver, car and dog, statements given by her to the police and, finally, whether she was subsequently contacted by other police officers after having initially reported the incident, to which questions she answered affirmatively. The state did not explicitly inquire into the circumstances surrounding the photographic lineup.[1] When, on cross-examination, the defense sought to inquire into the contacts and conversations between the victim and Officer Garber occurring after the date of the incident, the state objected on the ground that such questioning was outside the scope of direct examination,[2] which objection was sustained. The state later called Officer Garber who was questioned regarding her investigation of the case over a period of several weeks, as well as her contacts with Rivera. Again, the photographic lineup was not mentioned. On cross-examination, when the defense attempted to delve into the officer’s training in general and into her training concerning photographic lineups in particular, the state raised the same objection, which was again sustained. As a result, Rivera was forced to call Officer Garber as his own witness in order to bring out inconsistencies pertaining to the pretrial identifications and, because the officer was then a defense witness, he was precluded from impeaching her testimony through introduction of expert testimony pertaining to the proper method of photographic identification.[3]
First, we find no error in the denial of Rivera’s motion to suppress. The United States Supreme Court has recognized that the chance of mistaken identification in court increases in those instances in which pre-trial identifications, either in person or through the use of photographs, are made under unnecessarily suggestive circumstances. See United States v. Wade, *543 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). In such situations, the issue is whether the confrontation was “so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law.” Stovall, 388 U.S. at 302, 87 S.Ct. at 1972. In making this determination, the defendant’s claim must be evaluated “in light of the totality of [the] surrounding circumstances”, Simmons, 390 U.S. at 383, 88 S.Ct. at 970, with consideration given to the following factors:
[T]he opportunity of the witness to view the criminal at the time of the crime, the witness’ degree of attention, the accuracy of the witness’ prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.
Neil, 409 U.S. at 199, 93 S.Ct. at 382. Only if it is shown that “the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidenti-fication” will a conviction, based on an “eyewitness identification at trial following a pretrial identification by photograph”, be set aside. Simmons, 390 U.S. at 384, 88 S.Ct. at 971.
Rivera contends that our prior opinion in Smith v. State, 362 So.2d 417 (Fla. 1st DCA 1978), which reversed a conviction based upon an impermissibly suggestive photographic line-up identification, is controlling here. We do not, however, find here the same compelling factual circumstances that were present in Smith, where, in addition to a suggestive pre-trial identification, no live identification of the defendant occurred during trial, and therefore do not consider it controlling. The facts in this case, instead, are more akin to those in Salter v. State, 382 So.2d 892 (Fla. 4th DCA 1980), wherein it was held that appellant had failed to demonstrate reversible error “since identification testimony was based upon observation independent of the line-up.” Id. at 893. Accordingly, we affirm the denial of the motion to suppress.[4]
As in Salter, however, we find that reversible error occurred in that the trial court unduly restricted the defense’s cross-examination of the victim and Officer Gar-ber. A full and fair cross-examination of a witness in a criminal trial is a right belonging to a defendant, not merely a privilege. Coco v. State, 62 So.2d 892 (Fla.1953). As the Florida Supreme Court has explained:
The right of a criminal defendant to cross-examine adverse witnesses is derived from the Sixth Amendment and due process right to confront one’s accusers. One accused of crime therefore had an absolute right to full and fair cross-ex-amination_ A limitation on cross-examination that prevents the defendant from achieving the purposes for which it exists may be harmful error.
Steinhorst v. State, 412 So.2d 332, 337 (Fla.1982). Although Florida’s Evidence Code provides that the trial court “shall exercise reasonable control over the mode and order of the interrogation of witness *544 es,” Section 90.612, Florida Statutes (1979), this court has recognized that such discretion “is constrained by a defendant’s right to confront adverse witnesses.” Smith v. State, 404 So.2d 167, 169 (Fla. 1st DCA 1981). Accordingly, the “[c]urtailment of a defendant’s right to cross-examination of State witnesses is a power to be used sparingly.” Salter, 382 So.2d at 893. The vital importance of cross-examination to a criminal defendant is further heightened “when the cross-examination is of the key prosecution witness ... [and] ... positive identification is made under circumstances of questionable reliability.” Porter v. State, 386 So.2d 1209, 1213 (Fla. 3d DCA 1980) (e.s.). Recognizing the potential for mis-identification where the pre-trial use of photographic identification is said to be unnecessarily suggestive, the Supreme Court has suggested:
The danger that use of the [photographic line-up] technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method’s potential for error.
Simmons, 390 U.S. at 384, 88 S.Ct. at 971 (e.s.).
Here the state questioned the victim as to her identification of the driver and whether she had been contacted by police officers after reporting the incident. During the state’s direct examination, Officer Garber was questioned as to her investigation of the case from the time of the initial complaint up to Rivera’s arrest. When the defense sought to follow up on those subjects, it was precluded from doing so on the ground that the questions were outside the scope of direct examination. What the state sought to do here was quite similar to that done by it in Haager v. State, 83 Fla. 41, 90 So. 812 (1922), where the state restricted its direct examination of a witness to only a portion of the facts relating to a second degree murder charge against appellant, and then objected successfully to facts not specifically asked on cross-examination. On appeal the court declared such denial to be an impermissible limitation upon the defendant’s right to cross-examination, stating:
[W]e think it was proper for counsel on cross-examination to interrogate the witness about everything that was said or done either by Haager or Hall from the time the difficulty began until Haager left the scene of the difficulty. The state’s attorney could not limit investigation into the entire transaction by asking the witness about only a part of the difficulty, and the defendant had a right to inquire if the defendant said anything else.
83 Fla. at 49, 90 So. at 815.
Although the general rule is that cross-examination must either relate to matters brought out on direct examination or to the credibility of the witness, Steinhorst, 412 So.2d at 337, it is equally true that cross-examination need not be limited or “ ‘confined to the identical details testified in chief, but extends to its entire subject matter, and to all matters that may modify, supplement, contradict, rebut or make clearer the facts testified to in chief by the witness on cross-examination.’ ” Coco v. State, 62 So.2d at 895. The above rule is particularly applicable to the case before us in which it is alleged that unnecessarily suggestive photographic line-up procedures tainted the in-court identification of the defendant. Simmons, 390 U.S. at 384, 88 S.Ct. at 971; Salter, 382 So.2d at 893. By allowing into evidence the victim’s and her mother’s in-eourt identifications of defendant as the person who committed the offense, all the facts bearing upon the witnesses’ identification were relevant to test the credibility of such testimony.
We therefore conclude that it was reversible error for the trial court to so limit the defense’s cross-examination of the victim and of Officer Garber.
Rivera’s final point is that the court erred in refusing to instruct the jury as to the crime of attempted aggravated assault. We agree. Rivera was charged with aggravated assault with a deadly weapon, i.e., “a pistol firearm.” There is no room to *545 doubt that attempted aggravated assault is a crime in Florida and that refusal to instruct as to the attempt may amount to reversible error. Henderson v. State, 370 So.2d 435 (Fla. 1st DCA 1979). The revised version of Florida Rule of Criminal Procedure 3.510(a), which is applicable to this case, provides that the jury may convict a defendant of attempting to commit the offense with which he is charged if “such attempt is an offense and is supported by the evidence.”[5] In such a case, the court should instruct the jury as to the attempt unless “the only evidence proves a completed offense.” Id. (e.s.). Here, the only evidence pertaining to the use of a firearm was the testimony of the victim and her mother to the effect that Rivera had pointed a gun at them. No gun was ever produced or introduced, and the defense presented evidence that Rivera, a minor, had never owned or possessed a pistol. The jury’s verdict, finding Rivera guilty of aggravated assault with a deadly weapon, not a firearm, shows it did not believe he was guilty of committing the completed offense of aggravated assault with a firearm. Refusal to instruct the jury as to attempted aggravated assault where the evidence did not point to only a completed offense deprived Rivera of the opportunity for a “jury pardon”, a theory recognized as one of the compelling reasons for instructing as to attempts, Henderson, 370 So.2d at 437, and was therefore erroneous. See also State v. Bruns, 429 So.2d 307, 309-10 (Fla.1983).
For the above reasons, we AFFIRM denial of the motion to suppress but otherwise REVERSE Rivera’s conviction and REMAND for purposes of a new trial.
ZEHMER, J., concurs.
BOOTH, J., dissents.

. The state's failure to do so may have been based in part upon the defense’s objection to any testimony of pre-trial identification being admitted, particularly in regard "to any and all questions that are asked about that particular photo identification process done on 5/4/82.” The state then offered to stipulate to not mentioning the two photo identification procedures if the defense was willing to do so. However no such agreement by the defense appears on the record.

. The state’s objection was not well-founded. The state appears to have opened the door to that line of questioning by asking the victim during its direct examination whether she had any further contacts with other police officers.

.For example, Officer Garber had testified on direct examination as a defense witness that her disclosure of Rivera’s photograph to the victim and her mother was, under the circumstances, "standard police procedure.” When the defense attempted to call Garber’s supervisor to the stand for the purpose of testifying to the contrary, such testimony was not admitted on the ground that the defense was attempting to impeach its own witness. If such evidence had been admitted it may have reflected adversely on the credibility of Garber’s statement. Although the supervisor testified on proffer that all officers did things differently, he admitted that he had never pointed out a suspect’s photograph to a victim.

. In so holding, we have not overlooked the recent opinion of the Third District Court of Appeal in State v. Guerra, 455 So.2d 1046 (Fla. 3d DCA 1984). We find the facts in that case sufficiently distinguishable from the present. Although unnecessarily suggestive procedures occurred in both cases, the appellate court in Guerra was confronted with the question of whether there was sufficient evidence to sup- • port the trial court’s finding that the suggestion gave rise to a substantial likelihood of irreparable misidentification; here we are faced with the contrary finding, and are asked instead to hold that the court’s determination lacks support in the record. This, for the reason previously stated, we cannot do. We observe also that the victim, robbed allegedly by Guerra, continuously during her testimony, confused the details of five robberies which had occurred at the convenience store where she was employed, and was uncertain whether she could make an in-court identification of appellant as the robber.

. It should be observed that attempted aggravated assault is listed in the schedule of lesser included offenses as a category two-lesser offense, an offense which under Brown v. State, 206 So.2d 377 (Fla.1968), was an offense which may or may not be given depending on the accusatory pleading and the evidence. See Florida Standard Jury Instructions in Criminal Cases, pp. viii and 259.