849 So.2d 452 (2003)
STATE of Florida, Appellant,
v.
Rosario SACCO, Appellee.
No. 4D01-4829.
District Court of Appeal of Florida, Fourth District.
July 16, 2003.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Jeanine M. Germanowicz, Assistant Attorney General, West Palm Beach, for appellant.
David G. Vinikoor of David G. Vinikoor, P.A., and Paul Stark of Paul Stark, P.A., Fort Lauderdale, for appellee.
WARNER, J.
The state appeals the trial court's order dismissing its case against appellee, Rosario Sacco, for first degree murder. We affirm, holding that the state conceded the facts were undisputed and that it could not prove a prima facie case against appellee.
In 1992, Mack Swaim and appellee, Swaim's guardian, were indicted for the first degree murder of Randy Giacchina. The police were unaware of Giacchina's murder until an informant contacted the police and advised them his body was buried on Swaim's property. The informant also indicated Swaim had committed the murder. Based upon this information, the police obtained a search warrant for Swaim's property. Swaim was present at the search and showed the police where the body was buried. The police also found a gun, which Swaim admitted he had used in the murder. After Swaim was arrested and given his Miranda warnings, he confessed to the murder, taking sole responsibility.
Appellee was a very close friend of the Swaim family, having promised Swaim's father that he would take care of Mack *453 and his sister when Swaim died. The night after Swaim's arrest, appellee contacted the police and confessed to Giacchina's murder. Because appellee appeared intoxicated, the police discounted his confession but took a taped statement anyway. With this new information, the police questioned Swaim again. After Swaim heard of appellee's confession, he confirmed that appellee had killed Giacchina. Swaim and appellee were both indicted for first degree murder.
In 1996 both parties pled not guilty and their trials were severed. Appellee later changed his plea to guilty. Swaim was found not guilty of first degree murder but guilty of being an accessory after the fact. Later, appellee successfully moved to withdraw his plea. Over a year later, on appellee's motion, the trial court suppressed all the evidence recovered from Swaim's property, including Giacchina's remains and the murder weapon as well as Swaim's second confession in which he implicated appellee in the murder. Thus, the state's only evidence against appellee was Swaim's initial confession in which he took sole responsibility for the murder and appellee's confession.
Subsequently, in preparation for appellee's murder trial, the state subpoenaed Swaim to appear for a deposition. Swaim asserted his Fifth Amendment privilege at the deposition. The state filed a motion for a rule to show cause, maintaining that Swaim no longer had the right to assert the Fifth Amendment privilege where double jeopardy had attached to his case involving the same murder. Two and a half years later, the trial court issued a rule to show cause. Swaim sought a writ of prohibition in this court, but we dismissed because there was no order as yet compelling Swaim to testify.
In 2001, appellee moved to dismiss the nine year old case, contending that the state could not prove a prima facie case against him, specifically the corpus delicti, because Swaim refused to testify. At the first of several hearings on the motion, Swaim's counsel confirmed that Swaim would assert his Fifth Amendment privilege at trial. The state maintained that it could establish the corpus delicti without violating Swaim's privilege against self-incrimination, but it could not contest the defense's representation of the facts "in good faith."
After reviewing appellee's motion and the parties' arguments, the trial court held another hearing to clarify the state's position. The judge indicated that he was inclined to deny the motion because the possibility existed that Swaim might testify at trial. He also thought the state could prove the corpus delicti with circumstantial evidence. However, the prosecutor responded, "[i]n all candor, Judge, I don't think the state can prove it that way without the testimony of Swaim." The trial court set another hearing on the issue.
At the subsequent hearing, the judge expressed his hesitancy in proceeding to trial where it would be an "unproductive use of resources." In response, the prosecutor stated, "[c]ertainly is an issue whether the State of Florida can in good faith go forward." The prosecutor also indicated his recommendation was to enter a nolle-prosse. The court again recessed the proceeding to allow the prosecutor to determine whether to nolle prosse the case.
Finally, at the reset hearing, the court asked the prosecutor:
The Court: Let me ask you this question: Can the State in good faith go forward with this case?
Prosecutor: Depends on who you ask.
The Court: I'm asking you. You are the trial attorney on the case.
Prosecutor: In my opinion, no.

*454 Do I believe the defendant did it?
Yes.
The Court: Okay
Prosecutor: Do I believe that we could prove it with the available evidence?
No.
Do I havethe Good Housekeeping seal of approval to nol-pros the case?
I do not.
Will I work on it some more?
There's some more
The Court: My feeling is that the State Attorney's Office has in my view, if not a lawful, certainly an ethical duty to go forward or not go forward, as the case may be, in good faith.
If you are the lead prosecutor in this case and you say to me, as an officer of the Court, you cannot in good faith go forward on this case, I will grant the motion to dismiss.
These were the state's last comments before the trial court entered its order dismissing the case.
A defendant may move to dismiss an indictment under Florida Rule of Criminal Procedure 3.190(c)(4) where "[t]here are no material disputed facts and the undisputed facts do not establish a prima facie case of guilt against the defendant." In this case, although the state filed a denial of the sworn motion, at several of the hearings on the motion, the prosecutor conceded that the facts were undisputed and that based upon Swaim's refusal to testify, the state had no case. Even after the trial court indicated it was required to deny the motion and suggested the manner in which the state could prove a prima facie case, the prosecutor persisted in his assessment that he could not go forward with the case. While the state argues that the trial court improperly permitted Swaim to assert his Fifth Amendment right, it never made this specific legal argument at the hearings. The trial court never ruled on that issue but rather suggested that Swaim might choose to testify. It was the prosecutor's persistence that he could not in good faith go forward and his concession that the state could not prove its case that prompted the court to dismiss. Thus, the state's appellate arguments are not preserved. See Steinhorst v. State, 412 So.2d 332, 338 (Fla.1982).
The dismissal of this ten year old indictment is without prejudice. See State v. Gellis, 375 So.2d 885 (Fla. 3d DCA 1979). Because there is no statute of limitations for first degree murder, see § 775.15(1)(a), Florida Statutes (2002), if or when the state obtains additional evidence, it may refile the charges against appellant.
Affirmed.
FARMER, C.J., concurs.
STONE, J., dissents with opinion.
STONE, J., dissenting.
In my judgment, in the context of the several hearings in our record, the prosecutor's statement was an insufficient basis for the trial court to dismiss the case.
It is undisputed that the trial court was going to deny the motion to dismiss. The prosecutor's statement that, in his opinion, the state could not go forward in good faith cannot be separated from the underlying question of whether the key witness would ultimately testify, voluntarily or by compulsion, to establish the necessary corpus delicti. Obviously, the state's case was weak. However, this is not a case where the state had no proof of guilt; it had a confession. The state also had the witness' previous statement regarding the victim's death to support any decision to go forward. The concern was whether that testimony would become available at the time of trial, a matter that all acknowledge *455 could not be resolved on the pending (c)(4) motion to dismiss.
In this context, I cannot assume that the prosecutor was saying that the state would not be able to go forward in good faith in the event that the testimony needed to prove the death of the victim became available. It seems to me, that the statement as to good faith involved whether the prosecutor believed that there would be sufficient evidence for the state to proceed to prove a corpus delicti in the absence of the testimony of the recalcitrant witness. At best, this point is not clear. More should be required before the court can, essentially sua sponte, dismiss the state's case.