*218 LEWIS, J.,
concurring in result.
In my view, as it did in Asay v. State, 210 So.3d 1 (Fla. 2016), petition for cert. filed, No. 16-9033 (U.S. Apr. 29, 2017), the majority opinion incorrectly limits the retroactive application of Hurst by barring relief to even those defendants who, prior to Ring, had properly asserted, presented, and preserved challenges to the lack of jury factfinding and unanimity in Florida’s capital sentencing procedure at the trial level and on direct appeal, the underlying gravamen of this entire issue. Although the United States Supreme Court’s decision in Apprendi[3] became final while Hitchcock’s case was on direct appeal before this Court, Hitchcock did not raise a Sixth Amendment challenge to his death sentence for the first time until after our decision, in the form of a postconviction claim, after his death sentence became final. See Hitchcock v. State, 991 So.2d 337, 344 n.6 (Fla. 2008). Therefore, I agree that he is not entitled to relief, and I concur in the result. However, I write separately to explain my disagreement with the Hurst retroactivity issue as adopted by this Court.
Many courts struggle with the “staggeringly intricate body of law governing the question whether new constitutional doctrines should be ‘retroactively’ or ‘prospectively’ applied.” Witt v. State, 387 So.2d 922, 925 (Fla. 1980) (quoting Paul M. Bator et al., Hart & Wechsler’s The Federal Court & the Federal System 1477 (2d ed. 1973)). This Court need not tumble down the dizzying rabbit hole of untenable line drawing; instead, the Court could simply entertain Hurst claims for those defendants who properly presented and preserved the substance of the issue, even before Ring arrived. This is consistent with the precedent of this Court. In James v. State, 615 So.2d 668, 669 (Fla. 1993), we granted relief to a defendant who had asserted at trial and on direct appeal that the jury instruction pertaining to the heinous, atrocious, or cruel aggravating circumstance was unconstitutionally vague before the United States Supreme Court ultimately reached that same conclusion in Espinosa v. Florida, 505 U.S. 1079, 112 S.Ct. 2926, 120 L.Ed.2d 854 (1992). We concluded that—despite his case becoming final before the principle of law had a case name—it would be unjust to deprive James of the benefit of the Supreme Court’s holding in Espinosa after he had properly presented and preserved such a claim. James, 615 So.2d at 669. Similarly, I believe that defendants who properly preserved the substance of a Ring challenge at trial and on direct appeal prior to that decision should also be entitled to have their constitutional challenges heard.
Preservation of the issue is perhaps the most basic tenet of appellate review, see Steinhorst v. State, 412 So.2d 332, 338 (Fla. 1982); and this Court should be particularly cognizant of preservation issues for capital defendants. Accordingly, the fact that some defendants specifically cited the name Ring while others did not is not dispositive. Rather, the proper inquiry centers on whether a defendant preserved his or her substantive constitutional claim to which and for which Hurst applies.[4] This preservation approach—enshrined in James—ameliorates some of the majority’s concern with the effect on the administration of justice. Defendants, like Hitchcock, who did not properly preserve their constitutional challenges—through trial and di *219 rect appeal—forfeited them just as any other defendant who fails to raise and preserve a claim. However, those defendants who challenged Florida’s unconstitutional sentencing scheme based on the substantive matters addressed in Hurst are entitled to consideration of that constitutional challenge.
Jurists have echoed this type of approach as a remedy to the more exacting federal Teague[5] standard.[6] Federal courts have employed a similar preservation approach, and it is. “one of the dominant means by which federal courts limit the disruptive effects of legal change in the context of direct review of federal criminal convictions.”[7] Regardless of the limited federal approach, scholars urge state courts to pull retroactivity off Teague’s constitutional floor,[8] which the Supreme Court expressly permitted in Danforth v. Minnesota, 552 U.S. 264, 280, 128 S.Ct. 1029, 169 L.Ed.2d 859 (2008).
This Court’s adoption of the Stovall[9] /Linkletter[10] standard was intended to provide “more expansive retroactivity standards” than those of Teague. Johnson v. State, 904 So.2d 400, 409 (Fla. 2005). However, the Court’s retroactivity decision today eschews that intention. Further, it illuminates Justice Harlan’s famous critique of Linkletter:
Simply fishing one case from the stream of appellate review ... and then permitting a stream of similar cases subsequently to flow by unaffected by that new rule constitute^] an indefensible departure from this model of judicial review.
Williams v. United States, 401 U.S. 667, 679, 91 S.Ct 1171, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring in part and dissenting in part). However, that is how the majority opinion draws its determinative, albeit arbitrary, line. As a result, Florida will treat similarly situated defendants differently—here, the difference between life and death—for potentially the simple reason of one defendant’s docket delay. Vindication of these constitutional rights cannot be reduced to either fatal or fortuitous accidents of timing.[11]
Every pre-Ring defendant has been found by a jury to have wrongfully murdered his or her victim. There may be defendants that properly preserved challenges to their unconstitutional sentences through trial and direct appeal, but this Court now limits the application of Hurst, which may result in the State wrongfully executing those defendants. It seems axiomatic that “two wrongs don’t make a right”; yet, this Court essentially condones that outcome with its very limited *220 interpretation of Hurst’s retroactivity and application.

. Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

. See L. Anita Richardson & Leonard B. Man-dell, Fairness Over Fortuity: Retroactivity Revisited and Revised, 1989 Utah L. Rev. 11, 56-57 (1989).

. Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).

. Tung Yin, A Better Mousetrap: Procedural Default as a Retroactivity Alternative to Teague v. Lane and the Antiterrorism and Effective Death Penalty Act of 1996, 25 Am. J. Crim. L. 203, 232 (1998).

. Toby J. Heytens, Managing Transitional Moments in Criminal Cases, 115 Yale L.J. 922, 942 (2006).

. Christopher N. Lasch, The Future of Teague Retroactivity, or "Redressability,'' After Dan-forth v, Minnesota: Why Lower Courts Should Give Retroactive Effect to New Constitutional Rules of Criminal Procedure in Postconviction Proceedings, 46 Am. Crim. L. Rev, 1, 51-54 (2009).

. Stovall v. Denno, 388 U.S. 293, 297, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967).

. Linkletter v. Walker, 381 U.S. 618, 636, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965).

. See generally, Christopher M. Smith, Schriro v. Summerlin: A Fatal Accident of Timing, 54 DePaul L. Rev. 1325 (2005).