990 So.2d 565 (2008)
Olson PIERRE, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D06-2072.
District Court of Appeal of Florida, Third District.
July 16, 2008.
Rehearing Denied September 10, 2008.
*567 Robert Finlay; Albert Guffanti, Miami, for appellant.
Bill McCollum, Attorney General, and Jerome Smiley, Jr., Assistant Attorney General, for appellee.
Before SUAREZ, ROTHENBERG, and LAGOA, JJ.
ROTHENBERG, J.
Olson Pierre ("the defendant") appeals his convictions and sentences for attempted first-degree murder with a firearm, armed burglary, and armed false imprisonment. We affirm.
Fedlet Oscar ("the victim") testified that on the night of November 7, 2004, upon exiting the shower, he was confronted by a man armed with a black-colored firearm, who forced him into his living room at gunpoint. The victim also saw a second man ("the co-defendant"), who was armed with an "off-polished chrome" firearm, talking to Jouan Dhaiti ("the victim's ex-girlfriend"). In response to the co-defendant's demand for drugs and money, the victim handed $350 and some crack cocaine to the co-defendant. The defendant and co-defendant chased him into a bedroom closet, and both men shot the victim repeatedly. The victim's younger brother, Bimby Oscar, was sitting on the living room couch throughout these events.
Santana Oscar, the victim's mother, testified that she was awakened by noises, and when she emerged from her bedroom, she saw an armed man pointing a handgun at the victim. The man placed a gun to her head and ordered her to return to her bedroom and to stay there. The victim's mother testified that she heard a series of gunshots and screaming. After being shot, the victim made his way to his mother. She called 911 and the victim was taken to the hospital. After the shooting, both the victim and the victim's mother positively identified the defendant from an array of photographs.
At trial, the defense theory was that the defendant was not present when these crimes were committed and that these *568 crimes were committed by an unnamed third person. Prior to the victim's testimony, the State moved in limine to preclude the defense from eliciting any testimony on cross-examination regarding whether the victim was a drug dealer. The trial court granted the motion after finding that the testimony was irrelevant, misleading, and barred by case law. Prior to cross-examination of the witness, defense counsel asked leave from the trial court to permit him to cross-examine the victim regarding his drug dealing on the theory that the victim had opened the door to this evidence during direct examination. The trial court denied the motion.
To dispute the defendant's alibi defense, the State, over objection by the defendant, elicited testimony from Detective Schuster, the lead detective, as to the distance between the defendant's residence and the crime scene, and the approximate time it would take to travel from one location to the other. During its re-direct examination, after defense counsel repeatedly referred to the photographs in the photo arrays as "mug shots" in cross-examination, the State asked Detective Schuster to explain what a "mug shot" was and asked her whether any of the photo arrays contained "mug shots." The defense objected and moved for a mistrial, but since defense counsel previously used the phrase on several occasions, the trial court denied the defendant's motion for a mistrial.
The jury found the defendant guilty of the attempted murder of the victim, armed burglary, and false imprisonment. The trial court sentenced the defendant to life imprisonment for the attempted murder and armed burglary convictions, and to fifteen years for the false imprisonment conviction, and imposed a twenty-five year mandatory minimum sentence pursuant to section 775.087(2)(a)3., Florida Statutes (2006).
The defendant argues in this appeal that he is entitled to a new trial because: (1) the trial court did not allow his attorney to cross-examine the victim regarding his background as a drug dealer; (2) the trial court impermissibly allowed Detective Schuster to testify as to the location of the defendant's home, and the distance and travel time from the defendant's home to the crime scene; (3) the trial court erred in denying his motion to suppress the photographic identifications; (4) he was prejudiced by Detective Schuster's reference to the photographs in the photo arrays as "mug shots"; (5) there was insufficient evidence presented at trial to support the convictions; and (6) he was denied meaningful appellate review due to the missing portions of the post-trial transcript. We find that the points raised on appeal, considered individually and collectively, do not constitute reversible error.

Cross-Examination of the Victim
On appeal, the defendant claims that the trial court impermissibly limited his cross-examination of the victim by not permitting defense counsel to question the victim about his background as a drug dealer. The defendant claims that this cross-examination was relevant to the victim's veracity and the defendant's defense that an unknown third party committed these offenses. Assuming that the objection was properly preserved for appellate review, we find that the trial court did not err in limiting defense counsel's cross-examination, as the evidence the defendant sought to introduce was an impermissible character attack, was outside the scope of direct examination, and was intended to inject a defense to the crime through cross-examination and with no evidentiary support.
The law is well-settled that "questions on cross-examination must either relate to credibility or be germane to *569 the matters brought out on direct examination." Steinhorst v. State, 412 So.2d 332, 337 (Fla.1982). Although the defendant argues on appeal that cross-examination of the victim regarding his "lifestyle" was relevant to the victim's veracity, this is not the argument raised below. More importantly, whether or not the victim was a drug dealer does not shed any light on the truthfulness of the victim's testimony. We, therefore, find that the trial court did not err when it concluded that cross-examination of the victim regarding his drug dealing lifestyle was an impermissible character attack, not impeachment. In Ruland v. State, 614 So.2d 537 (Fla. 3d DCA 1993), the defendant made a similar argument on appeal. The Ruland court was similarly unpersuaded, and concluded that:
The trial court did not err in excluding evidence of the victim's drug use and possession of drug paraphernalia at the time of the offense. Contrary to the defendant's argument, such evidence was not offered at trial to impeach the ability of the victim to recall and relate the events at issue in this case; it was instead offered to establish that the victim was a drug dealer or user, and, thus, was an impermissible attack on the character of the victim.
Id. at 538.
The defendant also argues that because the trial court limited cross-examination regarding the victim's history as a drug dealer, he was unable to develop a key defensethat a third party committed the crimes. We are not persuaded by this contention, either. First, our review of the record reflects that the defense theory, that an unknown third party was responsible for the crimes, was entirely speculative and was not supported by any record evidence. Secondly, since the State did not elicit any evidence regarding the victim's drug dealing on direct examination, the trial court did not err by finding that the intended cross-examination would exceed the scope of the State's direct examination of the witness.
In Steinhorst, the Florida Supreme Court specifically held that "the defendant may not use cross-examination as a vehicle for presenting defensive evidence." 412 So.2d at 337. Additionally, the Florida Supreme Court held that:
While the defense had the right to question [the witness] as to the whole of the conversation he spoke of on direct examination... and as to the factual background of the conversation, to question him generally about his role in the marijuana smuggling operation would have been to engage in a general attack on his character.... [T]he court below was correct in preventing the cross-examination from either going beyond the scope of direct or becoming, under the guise of impeachment, a general attack on the character of the witness.
Id. at 338. When addressing Steinhorst's argument that in sustaining the State's objection to his cross-examination, he was deprived of the opportunity to develop a viable defense theory, the Florida Supreme Court noted:
In order to have developed the viable defense theory now asserted, defense counsel would have had to go beyond the scope of direct examination. This is a case in which it would have been proper to require the defendant, to develop his theory, to call his own witnesses, as this theory was clearly a defensive matter well beyond the scope of the direct examination.
Id. at 338-39.
Because the defendant's proposed line of questioning was an impermissible character attack, outside the scope of direct examination, and an improper attempt to *570 interject the defendant's theory of defense during cross-examination of the State's witness, we conclude that the trial court did not err in precluding cross-examination regarding the victim's history as a drug dealer.

Detective Schuster's Distance and Time Testimony
The defendant claims that the trial court erred when it allowed Detective Schuster to provide the defendant's home address to the jury and to testify approximately how long it would take to drive from the crime scene to the defendant's residence, arguing that the State failed to lay a proper predicate for the testimony and the evidence was inadmissible hearsay. We disagree.
The defendant argues that because the State did not establish that the road, traffic, weather, and other conditions on the night these crimes were committed were similar to the conditions the detective confronted when she traveled between the two locations, the trial court erred in admitting the evidence. Because the defendant neither objected to the testimony as speculative, nor explored the perceived weaknesses in Detective Schuster's timeline through a voir dire of the witness or during cross-examination of the witness, we conclude that any objection was not preserved for appellate review. We additionally find that even if the issue had been preserved, any error was harmless beyond a reasonable doubt. State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986).
The defendant's argument that the State used inadmissible hearsay to obtain the defendant's address, and therefore, the entire line of testimony should have been stricken, is also without merit. The defendant incorrectly contends that the detective obtained the address of the defendant's residence from the defendant's booking information or his driver's license. This is incorrect as Detective Schuster testified that the defendant's address was provided to her by the defendant himself. Thus, the information Detective Schuster obtained was admissible. See § 90.803(18)(a), Fla. Stat. (2006) (specifying that a statement offered against a party that was made by the party individually is admissible as evidence).
Accordingly, the trial court did not err in allowing Detective Schuster to testify as to the traveling time and distance between the defendant's residence and the crime scene.

Photographic Identifications of the Defendant
The defendant argues that the out-of-court photographic identifications of the defendant made by the victim and the victim's mother should have been suppressed. This argument is devoid of merit.
In Florida, there is a two-part test for the suppression of an out-of-court identification. State v. Styles, 962 So.2d 1031, 1032 (Fla. 3d DCA 2007). First, the trial court must find that the police employed an unnecessarily suggestive procedure. Thomas v. State, 748 So.2d 970, 981 (Fla. 1999). Second, if the trial court finds that the procedure was unnecessarily suggestive, it must examine the totality of the circumstances to determine whether the procedure gave rise to a "substantial likelihood of irreparable misidentification." Id.
In the instant case, the trial court found, and we agree, that the identification procedures employed were not unduly suggestive or improper in any way. Detective Schuster correctly told the victim and the victim's mother to focus on faces, not hairstyles, because hairstyles may change. Once the trial court determined that the identification procedure employed was not unduly suggestive, it was not required to *571 consider the second part of the test. Id. We, therefore, conclude that the trial court did not err in denying the defendant's motion to strike the out-of-court identifications of the defendant.
We additionally note that even if the procedures employed by Detective Schuster had been unnecessarily suggestive (which they were not), there was no substantial likelihood of irreparable misidentifications in this case because the identifications were made immediately, both the victim and the victim's mother had ample time to observe the defendant at the crime scene, and the victim knew the defendant because they attended school together in the past. Consequently, the trial court did not err in refusing to suppress the out-of-court photographic identifications of the defendant.

The State's References to "Mug Shots"
The defendant argues that he was unfairly prejudiced by the State's use of the phrase "mug shot" during the State's re-direct examination of Detective Schuster. The defendant contends that the trial court reversibly erred in denying the defendant's motion for a mistrial upon this ground. We disagree.
While a prosecutor's reference to photographs in a lineup as "mug shots" may result in prejudice sufficient to warrant a mistrial or a new trial, see Russell v. State, 445 So.2d 1091, 1091-92 (Fla. 3d DCA 1984) (reversing defendant's aggravated battery conviction because of inappropriate State comments related to a "mug photo album"), this is not such a case. The use of the phrase "mug shot" does not automatically require reversal. The entire record and the circumstances surrounding the reference must be considered to determine the prejudice, if any, that flowed from the reference. State v. Rucker, 330 So.2d 470, 470 (Fla.1976).
A review of the record reveals that the defense was first to use the phrase "mug shot." Defense counsel repeatedly referred to the photographs in the photo arrays shown to the victim and his mother as "mug shots" in his cross-examination of the witness. Thus, any subsequent use of the term by the State was invited by the defendant. During the re-direct examination of Detective Schuster, the State, after defense counsel had repeatedly referred to the photographs as "mug shots," asked Detective Schuster to explain the term or phrase "mug shot." Because we find that any alleged error in the use of this phrase or term was invited by the defense, the defendant's motion for a mistrial was properly denied.

Sufficiency of the Evidence
The defendant's argument that the evidence presented at trial was insufficient to support the convictions entered, is refuted by the record. The victim was shot approximately sixteen times by two assailants who were in very close contact with the victim within the victim's own home. The testimony of both the victim and the victim's mother were consistent. As outlined above, the out-of-court identifications of the defendant were reliable. The victim knew the defendant from school. Furthermore, the defendant submitted no evidence to suggest any prior difficulties between the victim and the defendant, or any motive for the victim or his mother to falsely identify the defendant as one of the individuals who committed these offenses, which nearly resulted in the victim's death.
We additionally conclude that there was sufficient evidence to support the defendant's conviction for false imprisonment based upon the victim's mother's testimony that she was ordered at gunpoint by one of the armed assailants to go to her bedroom. *572 See § 787.02(1)(a), Fla. Stat. (2004) (detailing the elements of false imprisonment).

Missing Transcripts
The defendant argues that because the transcripts from certain post-trial motions are missing, his right to a meaningful review on appeal has been violated. However, because the defendant has not identified any prejudicial error that would be revealed by a review of those transcripts, we find no merit to the argument. See Jones v. State, 923 So.2d 486, 489 (Fla.2006) (holding that when requesting a new trial on the basis of a missing or lost transcript, the defendant bears the burden of demonstrating that a prejudicial error occurred in the trial court); Armstrong v. State, 862 So.2d 705, 721 (Fla.2003) (finding that a new trial was not warranted where the defendant "failed to link a meritorious appellate issue to the allegedly missing record and thus cannot establish that he was prejudiced by its absence"); Darling v. State, 808 So.2d 145, 163 (Fla.2002) (finding unpersuasive Darling's argument that because there were no records of the pretrial hearings that occurred in the case, meaningful review was precluded, requiring a new trial, and holding that because Darling did not demonstrate what specific prejudice, if any, he incurred because of the missing transcript, the missing transcript was not shown to be necessary for meaningful review); Ferguson v. Singletary, 632 So.2d 53, 58 (Fla. 1993) ("As to those portions which are still not transcribed, Ferguson points to no specific error which occurred during these time periods. Under these circumstances, we reject this claim.").
Furthermore, the defendant has available, but has not exercised, his procedural right to reconstruct the record pursuant to Florida Rule of Appellate Procedure 9.200(b)(4). Accordingly, the defendant has not identified any reversible error related to the missing transcripts.

Conclusion
In sum, the contentions raised by the defendant fail to demonstrate reversible error. Taken either individually or as a whole, these alleged errors do not provide grounds for disturbing the convictions or sentences imposed below.
Affirmed.