# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D17-3132

_____

KENYA J. WILLIAMS,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

_____

On appeal from the Circuit Court for Leon County.
Angela C. Dempsey, Judge.

November 6, 2018

B.L. THOMAS, C.J.

In this *Anders*[1] appeal, Appellant was charged with first degree murder, attempted armed robbery with a firearm, armed robbery with a firearm, and possession of a firearm by a convicted felon, all arising out of an incident that occurred in the early morning hours of March 22, 2015. We affirm.

At trial, the State presented evidence that on the night of the incident, Michael Williams (the victim) went to Club Karma with two cousins, where they sat talking in the car outside the club. One cousin soon left to talk to a nearby friend, leaving the victim and his other cousin, Ambernesia President, in the car. Suddenly

---

[1] *Anders v. California*, 386 U.S. 738 (1967).

a man with a gun opened the front door of the car, and another man opened the rear door and told the victim to "give it up." The men started robbing them, but the victim laughed as though it were not serious. The man at the front door told the other man to "handle that" and walked toward the rear of the car; one or both men then shot and killed the victim. Ms. President ran to find her other cousin, and they drove off and called 911. Ms. President later identified Appellant in a photographic lineup as the man who opened the rear door of the car, which was admitted into evidence over defense counsel's motion to suppress. Ms. President also identified Appellant in court.

A few hours after the shooting, a man approached two women and asked if he could use their phone. The man was sweaty and covered in grass. He told the women he had been in an altercation at Club Karma and that "some guys at the club jumped me. I went home, got my gun, I unloaded my whole clip in their [expletive]." The man told the women that his mother had a house on Apalachee Ridge and that his girlfriend lived on Keith Street. He borrowed a phone and made a few calls. At some point, one of the women received a call from the victim's family friend, and the man ran away. The women called 911, and police apprehended Appellant based on the 911 description. A police officer drove one of the women to where Appellant was detained, and she identified Appellant as the man who borrowed her phone. At trial, she was shown a photograph of shoes and testified that the shoes in the photograph were the same shoes as those worn by the man who borrowed the phone. The trial court overruled defense counsel's objection to the witness being shown the photo before identifying Appellant.

Appellant's former girlfriend testified that a few hours before the incident, she and Appellant were drinking and smoking drugs at her house. She testified that at some point during the night, she left Appellant at her home with a man whom police later identified on the Club Karma surveillance video. She testified that when she returned home, she got into an argument with Appellant, and he took her phone; she then threatened to call the police for taking her phone. The State asked, "Weren't you threatening to call the police because you knew he had the gun that he just used to empty a clip in someone at Club Karma?"

2

She denied that assertion, as well as the State's question about whether she initially told police that Appellant left the house between 2:00 and 4:00 am, and that she had not seen him since. She admitted that she had been convicted eight times for crimes of dishonesty. The trial court then admitted, over defense counsel's relevance objection, jail visitation logs revealing that Appellant's former girlfriend had visited Appellant eighty times while he was in jail.

Several police and forensic witnesses testified about the crime and about evidence recovered at the crime scene. Russell Huston, a former investigator with the Tallahassee Police Department, testified that he interviewed Appellant and that Appellant understood his rights and signed a form indicating his desire to speak to police. Appellant admitted to police that he told the women on the porch that he had been involved in a shoot-out at Club Karma, but claimed to have fabricated the story, because he did not want to tell them about the argument with his girlfriend. When asked whether his timeline of the events remained consistent, defense counsel objected on the grounds that the question called for a legal conclusion.

At the close of the State's case, defense counsel moved for judgment of acquittal, arguing that the State relied on one or two eyewitnesses and that there was no fingerprint or DNA evidence tying Appellant to the crime. The trial court denied the motion. The jury found Appellant guilty as charged, finding as to the first degree murder charge that guilt had been established by felony murder.

*Analysis*

"[T]here are circumstances where a court-appointed appellate counsel will, 'after a conscientious examination,' find their client's case to be 'wholly frivolous.'" *Redmon v. State*, 211 So. 3d 306, 307 (Fla. 1st DCA 2017) (quoting *Anders*, 386 U.S. at 744). In such cases, counsel must "submit 'a brief referring to anything in the record that might arguably support the appeal.'" *Id.* In *Redmon*, the *Anders* requirements were met, as counsel outlined the facts and procedural history of the case, noted raised

objections, provided clear citations to the record, and identified possible issues with citations to appropriate legal authority. *Id.*

Like the counsel in *Redmon*, appellate counsel here gave a thorough description of the facts and procedural history, identified potential issues, and cited relevant authority for each issue to explain why no reversible error exists. We thus hold that appellate counsel satisfied the requirements established in *Anders*. We affirm without discussion those issues where there is no feasible basis for reversal. As to the remaining issues, after reviewing the merit of the issues identified by appellate counsel, and conducting an independent review of the record, we find no basis for reversal, and affirm for the reasons set forth below.

As to the State's peremptory strike of an African-American man from the venire, when a peremptory strike is used on a member of a distinct racial group to which the defendant belongs, and the opposing party requests a reason for the peremptory strike, the court must ask for a reason and the party must provide a race-neutral explanation. *Melbourne v. State*, 679 So. 2d 759, 765 (Fla. 1996). If the explanation is facially race-neutral and the court believes it is not pretextual, the strike will be sustained. *Id.* Here, because the State cited the potential juror's criminal record and noted specific instances where the potential juror failed to respond to questions or pay attention, we find no abuse of discretion in granting the peremptory strike.

Regarding the trial court denying defense counsel's cause challenge, "[w]here a defendant seeks reversal based on a claim that he was wrongfully forced to exhaust his peremptory challenges, he initially must identify a specific juror whom he otherwise would have struck peremptorily." *Trotter v. State*, 576 So. 2d 691, 693 (Fla. 1990). As Appellant accepted the jury, he has no basis to appeal this issue. *See id.*; *Couch v. Dunn Ave. Shell, Inc.*, 803 So. 2d 803, 804 (Fla. 1st DCA 2001).

Regarding the photographic line-up, the test for admissibility of an out-of-court identification is: "(1) did the police employ any unnecessarily suggestive procedure in obtaining an out-of-court identification; (2) if so, considering all the circumstances, did the suggestive procedure give rise to a substantial likelihood of

4

irreparable misidentification." *Willis v. State*, 242 So. 3d 1195, 1197 (Fla. 1st DCA 2018); *see also Pierre v. State*, 990 So. 2d 565, 570 (Fla. 3d DCA 2008) (holding that a detective "correctly told the victim and the victim's mother to focus on faces, not hairstyles, because hairstyles may change").

We conclude that instructing Ms. President not to focus on hairstyle or facial hair before showing her the photo lineup did not render the procedure unduly suggestive. Ms. President insisted that she was certain of her identification, and she testified that no one suggested in any way that she should pick a particular photo. The officer testified that he did not even prepare the lineup, he only presented it, and the trial court noted that the photographs were taken on a different date than when it was shown to Ms. President. This procedure was not unduly suggestive.

As to the State showing a photograph to a witness before the witness's in-court identification, "a witness may not testify to a matter unless evidence is introduced which is sufficient to support a finding that the witness has personal knowledge of the matter." § 90.604, Fla. Stat. Here, in identifying the shoes worn by Appellant, the State showed the witness a photograph of shoes worn by a person in ankle chains, showing the person's legs up to the shins. Because the witness had personal knowledge of the shoes, she could properly testify about the photograph. Although the witness had not yet identified Appellant, the photograph did not taint her later identification, as it did not show a person's face.

Moreover, if the court erred, such error would be harmless beyond a reasonable doubt. *See State v. DiGuilio*, 491 So. 2d 1129, 1135 (Fla. 1986). The witness's identification of the shoes that Appellant was wearing, when he asked to borrow her phone, merely corroborated evidence that Appellant was the man who spoke to her on the porch. Appellant's identification was supported by the witness's in-court identification of Appellant as the man she met, by phone records, by out-of-court identifications, and by Appellant's own statement to police.

5

No reversible error occurred when the State asked Mr. Huston if his timeline remained consistent. Lay witnesses must confine their testimony to facts and may not give opinions and conclusions. *Thomas v. State*, 317 So. 2d 450, 452 (Fla. 3d DCA 1975). The State's question asked for a factual response, not an opinion: Whether Mr. Huston modified his own created timeline upon receiving new information. It remained for the jury to determine the timeline of events, and the State's question did not usurp that determination.

As to the jail visitation log, defense counsel admitted that the evidence fell within the business records exception to hearsay, but argued that the evidence was irrelevant and that the State was improperly impeaching its own witness. A party may impeach its own witness with evidence of bias, if there is a foundation for bias. *Gosciminski v. State*, 132 So. 3d 678, 704 (Fla. 2013). The trial court did not abuse its discretion in admitting this evidence, as Appellant's former girlfriend's visits to see Appellant in jail were relevant to show that the witness was biased.

Finally, the trial court did not err in denying Appellant's motion for judgment of acquittal. "In reviewing the trial court's ruling on a motion for judgment of acquittal, the task of this court is to determine whether the state produced competent evidence to support every element of the crime." *Thomas v. State*, 589 So. 2d 392, 393 (Fla. 1st DCA 1991). Appellant was identified as the shooter by an eyewitness, and multiple witnesses identified him as the person who admitted to recently "emptying his clip" into someone at Club Karma. Any argument regarding the weight of the evidence does not negate the competent evidence that was presented as to each element of the charged offenses. *See Pagan v. State*, 830 So. 2d 792, 803 (Fla. 2002). We conclude that the trial court correctly denied Appellant's motion for judgment of acquittal.

AFFIRMED.

MAKAR and WINSOR, JJ., concur.

6

_____

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

_____

Candice Kaye Brower, Regional Counsel, Office of Criminal Conflict and Civil Regional Counsel, Region One, Gainesville; Melissa Joy Ford, Assistant Conflict Counsel, Office of Criminal Conflict and Civil Regional Counsel, Region One, Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, for Appellee.