QUINCE, C.J.,
concurring.
I concur in the majority’s decision that the evidence is insufficient to support Lindsey’s conviction, but write separately because I find the State’s line of questioning of Lindsey during the penalty phase improperly exceeded the scope of cross-examination and that the trial court erred in allowing the prosecution to question Lindsey about guilt phase issues.
During the penalty phase, Lindsey took the stand and testified during direct examination solely about his family and childhood. Then, on cross-examination, the *217 prosecution began by asking, “Mr. Lindsey, tell me about the first time you met the lady at the pawn shop.” Defense counsel timely objected, and a sidebar conference ensued. At sidebar, the State argued that the defense brought in the guilt phase because it had presented witnesses during the penalty phase to attack the credibility of State witness Mark Simms. The court ruled: “What’s good, as they say, for the gander. Going to, of course, the aggravating circumstances. You can’t go into every last thing, but going into the aggravating circumstances, those specifically relating to the Simms’ issues. Overruled.”
Thereafter, the prosecution continued to question Lindsey about Joanne Mazollo and the pawn shop:
Prosecutor: Tell me about the first time you met the lady at the pawn shop.
Lindsey: I don’t remember.
Prosecutor: Okay. You don’t remember going in and pawning something under the name of David Ashley?
Lindsey: Yes, I do remember that.
Prosecutor: And you don’t remember the lady who was there?
Lindsey: Not right off hand, no.
Prosecutor: When we heard your ex-wife Nikki testify that she was in the pawn shop with you a couple of days before the murder, and you and the woman greeted each other, because you knew each other, tell me about that.
Lindsey: She said that when I came in it was like we knew each other. Any place I go, I always show respect for the person that’s there.
Prosecutor: So you were there, met the lady that day. Tell me what you remember about it.
Lindsey: I’m not saying I was there that particular day. I’m just saying, when I go into places, I’d be respectful of people.
Prosecutor: Okay. How about the day before the murder?
Lindsey: I don’t recall.
Prosecutor-: Do you recall when you went back in there with Ronnie Lo-Ray and Alfonzer Harrold?
Lindsey: I don’t recall that.
Prosecutor: You don’t remember that?
Lindsey: No, I don’t remember that.
Prosecutor: She was seated in a chair.
She didn’t resist you, did she?
Defense: Objection. Argumentative.
Court: Sustained.
Prosecutor: Why did you put a gun to her head and pull the trigger?
Lindsey: I didn’t.
Defense: Objection, Your Honor, goes to—
Prosecutor: Goes to why he did it.
Defense: —what we said at sidebar.
Court: Overruled.
Prosecutor: Why did you do that?
Lindsey: I didn’t.
Prosecutor: So the jury is wrong?
Lindsey: I think the jury is mistaken.
Section 90.612(2), Florida Statutes (2006), provides:
Cross-examination of a witness is limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in its discretion, permit inquiry into additional matters.
“Thus, as a general rule, the questions on cross-examination must be no more broad in scope than those on direct.” Green v. State, 688 So.2d 301, 305 (Fla.1996) (holding that it was error to allow questions on cross-examination related to a witness’s prior use of alcohol when questions on direct were limited to use of alcohol on the *218 night of the murder); Salas v. State, 972 So.2d 941, 956 (Fla. 5th DCA 2007) (“[C]ross examination must relate to credibility of the witness or be germane to the matters brought out on direct examination.”) (citing Steinhorst v. State, 412 So.2d 332, 337 (Fla.1982)). These rules regarding cross-examination apply to all witnesses, including a defendant who takes the witness stand as Lindsey did in this case.
This Court has also defined the permissible scope of cross-examination as follows:
When the direct examination opens a general subject, the cross-examination may go into any phase, and may not be restricted to mere pai’ts ... or to the specific facts developed by the direct examination. Cross-examination should always be allowed relative to the details of an event or transaction a portion only of which has been testified to on direct examination. As has been stated, cross-examination is not confined to the identical details testified to in chief, but extends to its entire subject matter, and to all matters that may modify, supplement, contradict, rebut or make clearer the facts testified to in chief.
Zerquera v. State, 549 So.2d 189, 192 (Fla.1989) (quoting Coxwell v. State, 361 So.2d 148, 151 (Fla.1978)). And if a party wishes to elicit testimony on cross-examination that goes beyond what has been testified to in the direct examination, he must make the witness his own. Steinhorst, 412 So.2d at 337. To be clear, a party cannot use cross-examination as a vehicle for presenting evidence. Id.
Here, the prosecution’s questioning of Lindsey greatly exceeded the allowable scope of cross-examination. Lindsey never broached the subject of Mazollo or the pawn shop murder during his direct examination. Rather, Lindsey’s testimony on direct was limited solely to his childhood and his relationship with his family. The prosecutor’s entire questioning of Lindsey on cross-examination regarding Mazollo (i.e., how Lindsey knew the woman at the pawn shop; the fact that the woman was seated and did not resist Lindsey; why Lindsey put the gun to the woman’s head and pulled the trigger) had nothing to do with Lindsey’s relationship with his family or his childhood.
Thus, the trial court abused its discretion in allowing the prosecution to exceed the scope of direct during its cross-examination of Lindsey during the penalty phase. See Salas, 972 So.2d at 956 (“An appellate court reviews a trial court’s ruling concerning the scope of cross-examination for an abuse of discretion.”). I conclude that this error was not harmless. The prosecution’s comments were not only improper, but were also prejudicial and made with the apparent goal of inflaming the jury. Therefore, it cannot be concluded that these comments did not affect the jury’s decision to impose the death penalty. See State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986).
PARIENTE and PERRY, JJ., concur.