DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**HOMEOWNER'S CHOICE PROPERTY & CASUALTY INS. CO.,**
Appellant,

v.

**DEBORAH OAKES,**
Appellee.

No. 4D2024-1873

[March 18, 2026]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Keathan Briscoe Frink, Judge; L.T. Case No. CACE21-006061.

Mark David Tinker and Brandon James Tyler of Cole, Scott & Kissane, P.A., Tampa, for appellant.

Timothy Hubbard Crutchfield and Keith Alan Truppman of Mintz Truppman, P.A., North Miami, for appellee.

GROSS, J.

One of the most common reasons behind a per curiam affirmance without written opinion is that the appellant failed to preserve a legal issue for appellate review. It is informative for the Bar when this court writes on a preservation issue to flesh out its requirements. This is a case where an insurance company's attorney failed to preserve the legal issues raised on appeal regarding the interpretation of the underlying policy.

Homeowners Choice Property and Casualty Insurance Company (the "Insurer") appeals a final judgment entered in favor of the policyholder, Deborah Oakes. A jury returned a verdict for Oakes on her breach of contract claim against the Insurer.

The main issue on appeal concerns the interpretation of the policy. We therefore find it necessary to examine the policy's salient terms to give context for our holding.

### *The Insurance Policy*

Oakes held a homeowners' insurance policy with the Insurer. Section I of the policy contains four parts: (1) Property Coverages; (2) Perils Insured Against; (3) Exclusions; and (4) Conditions. We describe the policy in some detail to demonstrate that the case presented significant issues of policy interpretation.

The Property Coverages part consists of Coverage A (Dwelling), Coverage B (Other Structures), Coverage C (Personal Property), and Coverage D (Loss of Use). In addition to the four standard property coverages, Section I – Property Coverages also contains an "Additional Coverages – Collapse" provision, which states in relevant part:

> **8. Collapse**
> **a.** The coverage provided under this Additional Coverage – Collapse applies only to an abrupt collapse.
> **b.** For the purposes of this Additional Coverage – Collapse, abrupt collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.
> **c.** This Additional Coverage – Collapse does not apply to:
>    [listing various exclusions]
> . . .
> **d.** We insure for direct physical loss to covered property involving abrupt collapse of a building or any part of a building if such collapse was caused by one or more of the following:
>
>    **(1)** The Perils Insured Against in Coverage **C** – Personal Property;
>    **(2)** Decay, of a building or any part of a building, that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse.
>    However, **d.(2)** above does not provide coverage for a plumbing system or any part of a plumbing system resulting from decay as described in Additional Coverage **8.c.(4)** above;
>    **(3)** Insect or vermin damage, to a building or any part of a building, that is hidden from view, unless the presence of such damage is known to an "insured" prior to collapse;
>    **(4)** Weight of contents, equipment, animals or people;
>    **(5)** Weight of rain which collects on a roof; or

**(6)** Use of defective materials or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

The Additional Coverage – Collapse provision thus contains its own self-contained coverage grant separate from the coverage grants in Section I – Perils Insured Against. Also, the Additional Coverage – Collapse provision contains no language stating that the coverage granted in that provision is also subject to the Section I – Exclusions.

The operative coverage grants for Coverages A, B, and C are contained in the Section I – Perils Insured Against, not in the earlier Section I – Property Coverages section, which primarily describes the property and sets forth limits of liability. In Section I – Perils Insured Against, the policy contains the following coverage grant for Coverages A and B: "We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property." Similarly, Section I – Perils Insured Against contains the following coverage grant for Coverage C: "We insure for direct physical loss to the property described in Coverage C caused by a peril listed below unless the loss is excluded in SECTION I – EXCLUSIONS."

The policy's Perils Insured Against section expressly excludes collapse coverage except as provided in the Additional Coverage – Collapse provision:

<u>**SECTION I – PERILS INSURED AGAINST**</u>

**COVERAGE A – DWELLING and COVERAGE B – OTHER STRUCTURES**

We insure against risk of direct loss to property described in Coverages **A** and **B** only if that loss is a physical loss to property.

We do not insure, however, for loss:

**1.** Involving collapse, including any of the following conditions of property or any part of the property, whether above or below the ground:

   **a.** An abrupt falling down or caving in;

3

**b.** Loss of structural integrity, including separation of parts of the property or property in danger of falling down or caving in; or

**c.** Any spalling, crumbling, settling, cracking, shifting, bulging, racking, sagging, bowing, bending, leaning, shrinkage or expansion, or any other age or maintenance related issues, as such condition relates to **(1)** or **(2)** above;

except as provided in **8.** Collapse under Additional Coverages.

. . .

**3**. Excluded under Section I – Exclusions.

The Perils Insured Against section expressly states that the Section I - Exclusions apply to Coverages A, B, and C. As set forth above, within the Perils Insured Against section discussing Coverages A and B, the policy expressly states: "We insure against risk of direct loss to property described in Coverages A and B only if that loss is a physical loss to property. We do not insure, however, for loss: . . . 3. Excluded under Section I – Exclusions." And within the Perils Insured Against section discussing Coverage C, the policy expressly states: "We insure for direct physical loss . . . unless the loss is excluded in SECTION I – EXCLUSIONS." By contrast, the Additional Coverage – Collapse provision contains no language subjecting the coverage grant to the Section I – Exclusions.

The policy also includes an endorsement that completely replaces the Additional Coverages section of the policy when a catastrophic ground cover collapse occurs. The Catastrophic Ground Cover Collapse Endorsement contains the following language not included in the Additional Coverage – Collapse section applicable to Oakes's claim:

**SECTION I – ADDITIONAL COVERAGES** is replaced by the following:

**ADDITIONAL COVERAGES**
The following Additional Coverages are subject to all the terms, provisions, exclusions and conditions of this policy.

The Section I – Exclusions portion of the policy begins as follows: "1. We do not insure for loss caused directly or indirectly by any of the following." Paragraph 1 of this part then contains general exclusions precluding coverage for losses resulting from, among other things, "Fungi," Wet or Dry Rot, Yeast or Bacteria. Paragraph 2 of this part states: "We do

4

not insure for loss to property described in Coverages A and B caused by any of the following," including "Faulty, inadequate or defective . . . [d]esign, specifications, workmanship, repair, construction, renovation, remodeling, . . . [m]aterials[,] . . . [or] [m]aintenance."

### *The Loss*

In September 2020, a ceiling collapsed in the secondary home on Oakes's property. Oakes reported the claim to the Insurer, which denied coverage after its investigation.

### *The Lawsuit—Pleadings*

Oakes sued the Insurer for breach of contract, alleging that the collapse was covered by the policy and that the Insurer had improperly denied her claim.

The Insurer answered and raised several general policy exclusions in Section I – Exclusions as affirmative defenses, including the exclusion for faulty or defective design, construction, or maintenance (second affirmative defense) and the exclusion for fungi, wet or dry rot, yeast, or bacteria (fourth affirmative defense). The Insurer also raised as its first affirmative defense various exceptions to coverage within the Section I – Perils Insured Against portion of the policy, including "wear and tear, marring, deterioration," "smog, rust, decay or other corrosion," "settling, shrinking, bulging or expansion, including resultant cracking," "animals, whether dead or alive . . . including . . . vermin [and] termites," and "insects or pests."

### *Oakes's Motion for Partial Summary Judgment*

Oakes moved for partial summary judgment on the Insurer's affirmative defenses, arguing that the Policy provided specific "Additional Coverage" for the peril of collapse and that "only those exclusions and/or limitations contained within the additional coverage for collapse would apply."

Oakes alleged that she was entitled to partial summary judgment on the Insurer's affirmative defenses that were based on general exclusions, because "the only exclusions and/or exceptions to collapse coverage are those explicitly contained within the 'ADDITIONAL COVERAGES' for collapse provision of this insurance policy."

Relying upon *Kings Ridge Community Ass'n v. Sagamore Insurance Co.*, 98 So. 3d 74, 79 (Fla. 5th DCA 2012), Oakes argued that the "'additional

collapse coverage' cannot be modified or qualified in any manner by other listed exclusions except those specifically contained within the 'additional collapse' coverage provision." Oakes maintained that "there is not an actual conflict between the general exclusions and the 'Collapse' exceptions, but the application of the general exclusions to a 'Collapse' would render certain parts of the 'Collapse' exceptions mere surplusage." As such, Oakes argued, "only the specified 'Collapse' exceptions could be applicable to a collapse claim, as the *Kings Ridge* court made clear."

In sum, Oakes' motion asserted that the Insurer's affirmative defenses based on general exclusions were legally insufficient.

### *Insurer's Written Response to Motion for Partial Summary Judgment*

The Insurer responded in opposition to Oakes's operative motion for partial summary judgment on the affirmative defenses. The Insurer's response focused almost entirely on factual disputes regarding whether the alleged collapse was "abrupt," whether the damage was hidden, whether the damage was caused by insects or vermin, and whether the damage was known to Oakes prior to the collapse.

The Insurer offered no meaningful legal argument explaining why *Kings Ridge* should not apply or pointing out how the policy language in this case differed from that in *Kings Ridge*. Instead, the Insurer made only the cursory, superficial argument that "*Kings Ridge* is not 'definitive' as Plaintiff asserts and such an interpretation as to the subject policy would lead to nonsensical results."

The Insurer later filed over 100 pages of documents from the *Kings Ridge* litigation, including pleadings, motions, memoranda, and the summary judgment order. But this filing was nothing more than a document dump. The Insurer neither focused on any specific language within those documents nor advanced any argument that would justify distinguishing *Kings Ridge* from this case.

### *Hearing Before General Magistrate*

Oakes's motion for partial summary judgment was referred to a general magistrate.

During the hearing before the magistrate, Oakes's counsel relied on *Kings Ridge* and argued that "the only exclusions that apply relative to the additional coverage for collapse are the exclusions that are expressly

stated within the additional coverage." Oakes's counsel made clear that his position was based solely on contract interpretation, independent of the facts of the case.

The Insurer's counsel countered that Oakes had not met her summary judgment burden and that he could "just shut up and rely upon the lack of evidence." According to this lawyer, Oakes had not proven that the collapse was abrupt, that the decay/termite damage was unknown to Oakes prior to collapse, or that the collapse rendered the structure not suitable for living.

Significantly, the Insurer's counsel made no coherent, substantive argument against Oakes's interpretation of the policy or against the applicability of *Kings Ridge*.

Rather, the Insurer's counsel merely asserted without elaboration that *Kings Ridge* was "remarkably different" and "does not say what [Oakes's counsel] says it says." The Insurer's counsel later added this horseback opinion: "[Oakes's counsel] says, because there's an additional coverage provision, that no other coverages or exclusions apply. That's illogic [sic] and doesn't make any sense and not with any insurance law."

The Insurer's counsel offered no legal analysis of how the *Kings Ridge* policy was different from Oakes's policy, how Oakes's counsel had supposedly misstated the holding of *Kings Ridge*, or why Oakes's interpretation of the policy was illogical or otherwise inconsistent "with any insurance law."

### *Magistrate's Report and Recommendation*

The magistrate issued a Report and Recommendation concluding that Oakes's motion for partial summary judgment should be granted. The magistrate found "no disputed issues of material fact that prevent the Court from granting partial summary judgment to establish as a matter of law the correct interpretation of the subject policy language." The magistrate relied upon *Kings Ridge* and concluded that "the only exclusions and/or exceptions to collapse coverage are those explicitly contained within the 'ADDITIONAL COVERAGES' for collapse provision of this insurance policy." "Under the express terms and conditions of the insurance policy and the caselaw presented," the magistrate reasoned, "none of the general exclusions are applicable to the 'ADDITIONAL COVERAGES' for collapse." Thus, "based upon the pleadings and argument presented," the magistrate found that Oakes was entitled to

7

partial summary judgment on the Insurer's affirmative defenses related to general policy exclusions.

### *Insurer's Exceptions to Magistrate's Report*

The Insurer filed exceptions to the magistrate's report, arguing primarily that partial summary judgment in favor of Oakes was unwarranted because there were genuine issues of material fact regarding whether the collapse was "abrupt." The Insurer raised only the following cursory challenge to the magistrate's actual reasoning: "Moreover, the Report and findings therein failed to take into account the actual issues involved in *Kings Ridge* and distinctions between those issues and the issues in this lawsuit, including significant differences in the applicable policy provisions." The Insurer also argued that the magistrate's report was unclear.

### *Circuit Court Hearing on Exceptions*

Judge Frink held a hearing on the Insurer's exceptions to the magistrate's Report. At the outset of the hearing, Judge Frink succinctly framed the legal issue as whether the applicable Additional Coverage for Collapse provided only "limited exclusions," such that the general exclusions raised were "not specific" to the collapse coverage.

The Insurer's lawyer did not take the hint. He contended that the magistrate erred because Oakes had submitted "zero evidence" to establish that the collapse was abrupt or that the decay, insect, or vermin damage "was hidden from view and not known by the insured prior to collapse." Judge Frink responded that he understood the argument, "but the issue that I understand in the motion was just – was a partial summary judgment on your defenses."

The Insurer's counsel replied that if the collapse coverage provision did not apply, then the Insurer should be permitted to present other policy exclusions to the jury:

> [INSURER'S COUNSEL]: . . . [W]e filed summary judgment in opposition, showing that there are genuine issues of material fact as to whether it was even abrupt, to begin with.
>
> And if that's the case, if the fact finder finds that it was not abrupt, then those other exclusions in the policy that are the other affirmative defenses would necessarily potentially apply. And that's where we think that the magistrate erred. . . .

So, **if it is indeed that the collapse additional coverage provision does not apply because, for example, it was not abrupt, and/or it wasn't hidden and the Plaintiff didn't know about it prior to the collapse, then we contend those other provisions should -- we should be able to present those potential exclusions to the jury.**

(Emphasis supplied).

Instead of addressing Oakes's argument that the general exclusions raised in the affirmative defenses did not apply to the Additional Coverage – Collapse provision, the Insurer reiterated its argument that those exclusions applied if Oakes's claim was not covered under that provision. For example, the Insurer's lawyer made the following argument that justifiably confused the trial judge:

> [INSURER'S COUNSEL]: . . . And if the jury decides that it wasn't abrupt and that policy doesn't -- that additional coverage doesn't apply, then I think we're entitled to present to the jury those other additional exclusions such as wear and tear and things of that nature that would apply.

> THE COURT: Okay. That's where you lost me. So, we're just -- the only way that coverage is afforded is if it's under this provision for a collapse.

The Insurer's counsel concluded with the observation "to the extent I guess they're claiming any other damages outside of quote, unquote, 'collapse' in this matter, we would contend those other provisions exclude any such damages."

Oakes's counsel tried to bring the argument back into focus by pointing out that "this is only a collapse claim," and if he did not "prevail on the collapse claim and prove at trial that it falls within the definition of a collapse, I lose. End of story." He reiterated: "I didn't move for summary judgment on collapse. I just moved for summary judgment as to the exclusions that would apply to my collapse claim."

Judge Frink noted that the Insurer was "going further than what the motion is asking for," explaining that Oakes was "asking for the Court to make a legal determination of the defenses available based on the policy." Judge Frink added that this legal determination "requires an interpretation and reading of the policy, not whether the Plaintiff has

9

proven or the Defense has presented evidence or can prove whether these defenses apply, or whether there's, in fact, coverage."

The Insurer's lead counsel then explained that the Insurer's position "in a nutshell is if they cannot satisfy the abrupt collapse and knowledge requirements, then . . . this provision would not trump our defenses, and we would be allowed to present our defenses to the jury."

Oakes's counsel reiterated that he "would lose" under such a scenario, and Judge Frink agreed. Judge Frink observed that if the collapse was not abrupt, then Oakes would lose. Conversely, if an abrupt collapse were proven, the only exclusions available would be "the exclusions provided . . . under the additional coverages."

At the conclusion of the hearing, Judge Frink ruled: "I don't find anything legally incorrect with the magistrate's ruling based on the policy that applies." In short, Judge Frink ruled that "[t]he affirmative defenses that are raised based on the exclusions within the general coverages of the policy . . . do not apply, can't be raised; only those . . . available under the additional coverages." Judge Frink entered an order overruling the exceptions to the magistrate's report.

### *Trial, Verdict and Final Judgment*

The case proceeded to trial, where the Insurer was prohibited from arguing that the general policy exclusions barred coverage for the loss. The jury returned a verdict in favor of Oakes, finding that (1) the loss occurred during the policy period, (2) the Insurer did not prove that Oakes failed to provide documents and records, (3) the Insurer did not prove that Oakes failed to mitigate damages, and (4) Oakes suffered $80,772 in damages. The trial court entered a final judgment awarding Oakes the damages fixed by the jury along with prejudgment interest. The trial court denied the Insurer's motion for new trial, prompting this appeal.

### *The Insurer's Arguments on Appeal*

On appeal, the Insurer makes a detailed argument concerning the interpretation of the policy. The Insurer contends that the trial court erred by prohibiting it from asserting general policy exclusions as defenses to Oakes's claim for collapse coverage.

First, the Insurer argues that the text and structure of the policy—and well-reasoned case law—demonstrate that the general exclusions apply to all coverages, including additional coverages. Specifically, the Insurer

asserts that "the Exclusions part does not differentiate between the relevant coverages," and that the trial court "contorted" the collapse exclusion to somehow displace all other exclusions. The Insurer contends that the policy's structure—with general exclusions separately following the collapse coverage and the collapse exclusion—demonstrates that general exclusions apply to all coverages.

Second, the Insurer argues that *Kings Ridge* is distinguishable because the Insurer's policy is structured differently, with the "except as provided in" language appearing in the "Perils Insured Against" part rather than alongside the general exclusions; unlike here, the Insurer argues, the exclusion asserted in *Kings Ridge* directly conflicted with the grant of collapse coverage.

Third, the Insurer argues that *Kings Ridge*'s holding that general exclusions could not apply to collapse coverage is unsupported, and ample authority from other jurisdictions reaches the opposite conclusion.

Fourth, the Insurer argues that faulty-construction-or-maintenance and fungi-or-rot exclusions are consistent with the grant of coverage for collapse, so the Insurer should have been allowed to raise them as defenses.

Oakes answers that the judgment on appeal must be affirmed because the Insurer did not present the trial court with the arguments it now raises as grounds for reversal and thus failed to preserve the arguments for appellate review. Oakes emphasizes that the Insurer did not present any of the arguments set forth in the headings of its initial brief—such as arguments about policy structure, distinctions from *Kings Ridge*, or out-of-state case law—to the magistrate or to Judge Frink.

### *Discussion*

We agree with Oakes that the Insurer failed to adequately preserve the specific arguments it advances on appeal.

"It is well established that issues not properly preserved are waived." *State v. Clark*, 373 So. 3d 1128, 1131 (Fla. 2023). Specificity in the trial court is the key to preservation for appeal. "[T]o be preserved for further review by a higher court, an issue must be presented to the lower court and the specific legal argument or ground to be argued on appeal or review must be part of that presentation if it is to be considered preserved." *Sunset Harbour Condo. Ass'n v. Robbins*, 914 So. 2d 925, 928 (Fla. 2005) (quoting *Tillman v. State*, 471 So. 2d 32, 35 (Fla. 1985)); *see also Santiago*

*v. Mauna Loa Invs., LLC*, 189 So. 3d 752, 757 (Fla. 2016) (applying *Tillman*). The argument on appeal "must be the specific contention asserted as legal ground for the objection, exception, or motion below." *Steinhorst v. State*, 412 So. 2d 332, 338 (Fla. 1982).

Recently, the Florida Supreme Court has tightened up the requirements for preservation, rejecting the notion that vague comments can substitute for clear and specific legal objections.

In *State v. Pacchiana*, 289 So. 3d 857, 862 (Fla. 2020), the Florida Supreme Court held that defense counsel's comment—"[t]hat's a religious based strike"—was not itself a clear and specific legal objection to the constitutionality of a peremptory strike on religious grounds, even though defense counsel's comment occurred during a *Batson*[1] challenge to the prosecution's exercise of a peremptory strike against an African-American Jehovah's Witness.

Following *Pacchiana*, this court has explained that "it is not enough to generally talk about an objection; to preserve an issue for appeal, a litigant must assert the 'clear and specific' objection required by the law." *Chiarella v. Ford*, 383 So. 3d 102, 105 (Fla. 4th DCA 2024). Indeed, "[m]erely referring to an authority without expressly arguing to the lower court the principle that flows from it is inadequate to preserve the issue for review if the argument was not considered by the trial court." *12550 Biscayne Condo. Ass'n v. NRD Invs., LLC*, 336 So. 3d 750, 756 (Fla. 3d DCA 2021).

Here, the Insurer failed to preserve the specific arguments it now advances to challenge the trial court's ruling that the Insurer could not raise general policy exclusions as defenses against Oakes's claim for collapse coverage. Despite some gentle prodding from Judge Frink to get on point, the Insurer's counsel appeared to miss the legal thrust of the motion for partial summary judgment. Nothing remotely resembling the detailed arguments in the initial brief was presented below. The Insurer's arguments on appeal were not presented to either the magistrate or Judge Frink with sufficient clarity, specificity, or legal development.

First, none of the core legal arguments now raised on appeal were sufficiently articulated below. The Insurer's initial brief advances four distinct sub-arguments challenging the trial court's ruling that general exclusions did not apply to the additional collapse coverage: (1) the text and structure of the policy demonstrate that general exclusions apply to

---

[1] *Batson v. Kentucky*, 476 U.S. 79 (1986).

all coverages, including additional coverages; (2) *Kings Ridge* is distinguishable due to differences in policy language; (3) *Kings Ridge*'s holding is unsupported and conflicts with ample authority from other jurisdictions; and (4) the faulty-construction and fungi-or-rot exclusions are consistent with the grant of additional coverage for collapse. However, these arguments either were not presented below or were presented in such a superficial way as to constitute a waiver.

Merely referencing *Kings Ridge* and asserting that it was "not definitive" or "would lead to nonsensical results" was insufficient to preserve the challenges raised on appeal to its holding or applicability. The Insurer did not attempt below to distinguish the policy language in *Kings Ridge* from the policy language here, nor did the Insurer assert below that *Kings Ridge* was in conflict with out-of-state jurisprudence.

While the Insurer dumped a number of documents from the *Kings Ridge* litigation into the trial court's lap, it was not the trial court's job to sift through those documents, organize them, and divine the Insurer's argument. The Insurer offered no meaningful legal argument below explaining why *Kings Ridge* should not apply or how the policy language in this case differed from that in *Kings Ridge*. The Insurer presented no textual or structural analysis below of how the additional collapse coverage interacted with general exclusions. In short, the Insurer never advanced any coherent legal principle below for why *Kings Ridge* was wrong or distinguishable.[2]

---

[2] We do not mean to suggest that *Kings Ridge*, or any legal authority, necessarily obtains the meaning proposed by one party where the other party fails to adequately address their opponent's characterization of it. "When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991). "The contrary conclusion would permit litigants, by agreeing on the legal issue presented, to extract the opinion of a court on hypothetical Acts of Congress or dubious constitutional principles, an opinion that would be difficult to characterize as anything but advisory." *U.S. Nat'l Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 447 (1993); *see also United States v. Undetermined Quantities of All Articles of Finished & In-Process Foods*, 936 F.3d 1341, 1350 (11th Cir. 2019) ("The court's role is to get it right, not to choose which side's argument is better and adopt it lock, stock, and barrel.").

Put more eloquently, "[i]t is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. 137, 177 (1803).

Likewise, the Insurer's statement to the magistrate that Oakes's position was "illogic [sic] and doesn't make any sense and not with any insurance law" does not equate to the presentation of a specific legal argument regarding how the general exclusions interacted with the additional collapse coverage in the policy. Such a conclusory, superficial assertion fails to meet Florida's standard for preservation. Again, the Insurer never offered any legal analysis of how Oakes's interpretation of the policy was illogical or otherwise inconsistent "with any insurance law." Although a litigant need not file a full-blown appellate brief in the trial court, the litigant must fairly apprise the court of the legal argument being advanced.

The Insurer's strategy in opposing the motion for partial summary judgment was primarily to argue that factual disputes precluded summary judgment. The Insurer largely failed to grapple with Oakes's actual argument for partial summary judgment concerning the inapplicability of general exceptions or exclusions based on the policy language. At the hearing before Judge Frink, the Insurer made a different argument than the arguments it now advances on appeal. The Insurer argued that *if* Oakes was claiming any damages other than "collapse," *then* the general exclusions would apply.

In sum, the Insurer did not present the trial court with any of the specific legal arguments now advanced on appeal concerning policy text and structure, the alleged lack of conflict between collapse coverage and certain exclusions like faulty workmanship and fungi/rot, and out-of-state jurisprudence. The Insurer offered no meaningful distinction from *Kings Ridge* and pursued a largely fact-based opposition to the motion for partial summary judgment. None of the Insurer's textual, structural, or jurisprudential arguments were ever considered by the magistrate or Judge Frink.

The trial court construed the policy based on the arguments raised below. That the trial court so construed the policy language does not open the door on appeal to raise every argument that might have been—but was not—presented to the trial judge. Because the Insurer's specific arguments were raised for the first time on appeal, they are unpreserved and waived.

---

But when a party, as the Insurer here, fails to make an argument below—legal or factual—they will generally not be heard to make the argument for the first time on appeal. In other words, that argument raised for the first time is not "properly before the court." *Kamen*, 500 U.S. at 99.

For these reasons, we affirm the final judgment on appeal without reaching the issue concerning the proper construction of the insurance policy. Nothing in this opinion should be taken as even a hint of a ruling on that issue.

*Affirmed.*

CIKLIN and LOTT, JJ., concur.

*     *     *

**_Not final until disposition of timely-filed motion for rehearing._**